George Rahsaan BROOKS, Petitioner,

v.

Charles H. ZIMMERMAN, and The Attorney General of the Commonwealth of Pennsylvania, Respondents.

Civ. A. No. 88-1427.

United States District Court,
W.D. Pennsylvania.

May 9, 1989.

George Rahsaan Brooks, SCI Graterford, Graterford, Pa., pro se.

Robert E. Colville, Pittsburgh, Pa., for respondents.

## MEMORANDUM ORDER

MENCER, District Judge.

The instant petition for writ of habeas corpus was referred to United States Magistrate Gary L. Lancaster in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 3 and 4 of the Local Rules for Magistrates.

On April 18, 1989, the Magistrate filed his Report and Recommendation, which concluded that the petition should be denied. The parties were allowed ten (10) days from the date of service to file objections. Petitioner filed objections on May 2, 1989. After *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation and objections thereto, the following order is entered this 9th day of May, 1989:

1) The petition for writ of habeas corpus is denied. A certificate of probable cause is denied.
2) The Report and Recommendation of Magistrate Lancaster is adopted as the opinion of the court.

## REPORT AND RECOMMENDATION

GARY L. LANCASTER, United States Magistrate.

George Rahsaan Brooks is a prisoner at the State Correctional Institution at Graterford, Pennsylvania. He seeks a writ of habeas corpus, *pro se* and *in forma pau-*

*peris,* pursuant to 28 U.S.C. § 2254(b) and (c). For the reasons set forth below, the petition should be dismissed.

## I. *Procedural History*

On May 18, 1976, petitioner was convicted of robbery and murder of the second degree (felony murder) before a jury sitting in the Court of Common Pleas of Allegheny County, Pennsylvania, and sentenced to life imprisonment. The Supreme Court of Pennsylvania affirmed the judgment of sentence by *per curiam* order on November 5, 1981. Thereafter, petitioner filed a petition with the trial court pursuant to the Pennsylvania Post–Conviction Hearing Act ("PCHA"), 42 Pa.C.S.A. § 9541 *et seq.* The court denied the petition; on appeal, the Superior Court of Pennsylvania remanded for an evidentiary hearing. After hearing, the trial court again denied the petition and the Supreme Court of Pennsylvania affirmed that decision by order of April 19, 1988. Thereafter, petitioner filed the present petition for writ of habeas corpus.

In the instant petition, Petitioner raises twelve separate grounds for relief and, in a supplemental petition, he raises two additional grounds. A review of the record reveals that all issues have been raised and exhausted at the state level.

## II. *Standard of Review*

A state prisoner is entitled to federal habeas relief only if he is held "in custody in violation of the Constitution, or laws, or treaties of the United States." 28 U.S.C. § 2254(a). Insofar as petitioner simply challenges the correctness of the conviction under Pennsylvania law, however, he alleges no deprivation of federal rights and may not obtain habeas relief. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). It has long been understood that a state may violate its own law without violating the Constitution. *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). "This court will not treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). To receive review of what otherwise amounts to nothing more than an error of state law, a Petitioner must argue not that it is wrong, but that it is *so* wrong, so surprising, that the error violates principles of due process. For example, a retroactive change by a legislature violates the Ex Post Facto Clause; an equally retroactive change by the courts violates the Due Process Clause. *See Bouie v. Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Similarly, a federal habeas court will review alleged sentencing error if the sentencing court relied on "misinformation of a constitutional magnitude." *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). *But see, Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (a mere change of law does not permit relitigation of a settled question). Therefore, a habeas petitioner must show that the state court's decision was such a gross abuse of discretion that it was unconstitutional, because "ordinary" error is outside the scope of section 2254. Based on this rationale, we turn to the issues currently before us.

## III. *Discussion*

The facts relevant to this case are summarized as follows: On the morning of September 30, 1975, Ms. Lula Miller, the mother of Michael Miller, was working at the Presbyterian University Hospital when she was called down to the emergency room. There she saw petitioner (who she described as wearing a neck brace), a Mr. Harris, and her son. Mr. Harris and Michael Miller left together. Sometime thereafter, two police officers found a battered Michael Miller lying in a nearby alley. He told the officers that he had been robbed and beaten by some friends. He told his mother he had been beaten by the man with the neck brace. Miller eventually died of his injuries sustained in the robbery.

## A. *Voluntariness of Confession*

Petitioner was arrested for and was being questioned about an unrelated robbery when he made an inculpatory statement relating to the Miller murder. He challenges the trial courts refusal to suppress this inculpatory statement.

After being informed of his *Miranda*[1] rights, petitioner waived his right to counsel and agreed to answer the interrogating officer's questions. During the questioning, the officer told petitioner he knew petitioner had been involved in prior robberies and then mentioned the robbery involved in this case. The officer also told petitioner that Miller might die. At that point, petitioner stated that his partner had beaten Miller, not him. Petitioner now argues that since he did not know he was being questioned about this crime, his waiver of rights was not "knowing and intelligent." The trial court specifically held that, at the time he made the statement in question, petitioner knew the officers suspected his involvement in the assault/homicide in question and that his *Miranda* waiver was knowingly made without coercion or trickery

Section 2254(d) provides, in pertinent part, that state court findings of fact, with certain exceptions, "... shall be presumed to be correct ..." in federal habeas corpus proceedings. This deference is in recognition of the trial court's advantageous position to observe the demeanor and credibility of the witnesses, a need for finality in the establishment of facts, and a respect for federal-state comity. *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985).

■ This presumption does not apply, however, to mixed questions of law and fact. *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Whether a statement was voluntarily made is such a mixed question. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985); *see also United States v. Fraction*, 795 F.2d 12 (3d

Cir.1986) (same). In *Miller*, the Supreme Court held that the ultimate constitutional question of the voluntariness of a confession under the due process clause is "a legal inquiry requiring plenary federal review"; yet, the "subsidiary factual questions" underlying the voluntariness determination remain entitled to the presumption of correctness. 474 U.S. at 112, 106 S.Ct. at 452. *See generally Carter v. Rafferty*, 826 F.2d 1299 (3d Cir.1987) (held materiality of evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) is mixed question of law and fact and not entitled to section 2254(d) presumption), *cert. denied,* —— U.S. ——, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988); *Ahmad v. Redman*, 782 F.2d 409 (3d Cir.1986) (held voluntariness of *Miranda* rights is a mixed question of law and fact, subject to plenary review by federal habeas courts), *cert. denied,* 479 U.S. 831, 107 S.Ct. 119, 93 L.Ed. 2d 66 (1986). Accordingly, we accept the underlying facts, as set forth *infra*, to be an accurate rendition of the interrogation setting.

■ Nevertheless, petitioner cites *United States v. McCrary*, 643 F.2d 323 (5th Cir.1981), for the proposition that a waiver of the right to remain silent and the right to counsel cannot be made knowingly if the suspect is totally unaware of the offense upon which the questioning is based. *Id.* at 328. He argues that because he did not know he was a suspect in this case when signing the waiver card, the waiver cannot stand. Petitioner's argument in this respect has been conclusively rejected by the United States Supreme Court in *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). In *Spring*, the accused did not challenge the explanation or his understanding of the *Miranda* waiver. Rather, he sought to suppress inculpatory statements alleging the interrogating officer had not informed him of the nature of the charges against him. In rejecting this claim, the Supreme Court set to rest any question regarding the effect lack of such information may have.

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[W]e have never read the Constitution to require that the police supply a suspect with a flow of information [including the charges against him] to help him calibrate his self-interest in deciding whether to speak or stand by his rights.

*Id.* at 576–77, 107 S.Ct. at 859, (*quoting Moran v. Burbine,* 475 U.S. 412, 422, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)). Here, as in *Spring,* the additional information could affect only the wisdom[2] of a *Miranda* waiver, not its essentially voluntary and knowing nature. Accordingly, the failure of the law enforcement officials to inform petitioner of an ancillary subject matter of the interrogation does not affect the voluntary nature of his decision in a constitutionally significant manner.

■ Therefore, the relevant question is whether petitioner voluntarily waived his right to remain silent. The record reveals that after petitioner was advised of his *Miranda* rights, the officer stated that petitioner had been involved in a lot of robberies and, in one instance, he may be involved in a murder. When petitioner questioned his meaning, the officer indicated that the victim in this case might die. It was after this exchange that petitioner replied, "The only thing I did was grabbed him and knocked him down in the alley and my partner did the beating and kicking." We conclude that this sequence of events, coupled with the lack of allegation of other coercive tactics by the investigating officers, is adequate evidence to meet the Commonwealth's burden of establishing the voluntariness of the confession by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). Therefore, the ruling of the state trial judge was not constitutionally unsound.

### B. *Tainted in-court identification*

Petitioner next suggests that the in-court identification by Lula Miller should have been suppressed because her identification was tainted by the fact that she had observed petitioner at the Coroner's inquest.

■ In determining whether a pretrial identification is so suggestive as to taint an in-court identification, the determining factor is whether the witness' identification was reliable. In other words, does the taint of suggestiveness create "a very substantial likelihood of misidentification." *United States v. Sebetich,* 776 F.2d 412, 417 (3d Cir.1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988) (*quoting Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972)). In determining the likelihood of misidentification we must take into account "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199, 93 S.Ct. at 382.

■ In reviewing the instant record, we have no difficulty in determining that Ms. Miller's in-court identification was reliable. She testified to having observed petitioner on the day of the robbery in the well-lighted emergency room at a hospital. An employee at the hospital, Ms. Miller observed petitioner for approximately fifteen minutes and conversed with him. She gave a complete and accurate description of him to the police on the night of the assault and was certain of her in-court identification. The trial court concluded that the Commonwealth had satisfied its burden of establishing that the witness' in-court identification rested on a firm and independent basis. Likewise, this court's review of the record reveals the lack of any substantial likelihood of misidentification. *See generally Manson v. Brathwaite,* 432 U.S. 98, 113–16, 97 S.Ct. 2243, 2252–54, 53 L.Ed.2d 140 (1977).

---

**2.** *See Collins v. Brierly,* 492 F.2d 735, 738–9 (3d Cir.1974) ("Indeed, it may be argued forcefully that a choice by a defendant to forego the presence of counsel at a police interrogation is almost invariably an unintelligent course of action.").

### C. *Commonwealth witness' reference to prior criminal activity*

 Petitioner next asserts that a mistrial should have been declared when a Commonwealth witness, Officer Calfo, testified that, during interrogation of petitioner, the officer told him, "You know you have been involved in a lot of robberies, George." Defense counsel objected and the court ordered the testimony stricken and instructed the jury to disregard it. The trial court concluded that the improper statement was not purposefully elicited and was purged by curative instructions.

If we allow that the court erred in overruling the objection, petitioner is still not entitled to the relief that he seeks. An evidentiary error in a state trial justifies federal habeas corpus relief only if the error is

> so extreme that it constitutes a denial of fundamental fairness under the due process clause. Furthermore, '[t]he challenged evidence must be "a crucial, critical, or highly significant factor in the context of the entire trial." '

*Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir.1988). *See also Bisaccia v. Attorney General*, 623 F.2d 307 (3d Cir.1980), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). Unlike the case in *Lesko v. Jeffes*, 689 F.Supp. 508 (W.D.Pa. 1988), where a Commonwealth witness gave extensive testimony relating to the defendant's unrelated criminal escapades, in this case there is a brief, unspecific allusion to prior criminal activity, which the court quickly struck. Viewed in the totality of the evidence presented in this trial, we conclude the error was not so fundamental as to warrant habeas relief.

### D. *Sufficiency of the Evidence*

Petitioner's next three claims relate to a general assertion that the evidence adduced at trial was insufficient to show the cause of death by criminal enterprise or to show that petitioner had engaged in the related robbery and assault.

 A challenge to the sufficiency of the evidence presents a colorable claim for habeas corpus relief as it implicates an essential due process right guaranteed by the fourteenth amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of each element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The relevant question in reviewing such claims is whether, after a review of the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia, id.* at 315, 99 S.Ct. at 2787 (citing *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)); *Sullivan v. Cuyler*, 723 F.2d 1077, 1083 (3d Cir.1983); *Paullet v. Howard*, 634 F.2d 117, 118 (3d Cir.1980) (*per curiam*).

 Our review of the record reveals sufficient evidence to link petitioner to the victim's robbery and assault. Petitioner and his co-actor were seen with the victim by the victim's mother in a well-lighted emergency room at a hospital immediately prior to the criminal incident. The three left the emergency room together, and the victim was discovered later that evening, having been robbed and beaten. The victim did not die immediately, and over a course of days, he indicated to family members that "Brooks" had stolen his money. While testimony by family members is subject to careful scrutiny, their credibility was for the jury to determine.

Finally, petitioner made an inculpatory statement regarding this incident which is properly a part of the record. Likewise, the record supports a conclusion that the victim died as the result of the assault and robbery. The Commonwealth presented an expert witness who testified that the cause of death was a blunt force trauma to the abdomen. Based on the total record, we find sufficient evidence, if believed by the jury, to support petitioner's conviction.

### E. *Prejudicial Opening Statement by Prosecutor*

 Petitioner contends that trial counsel was ineffective for failing to object to

allegedly prejudicial remarks made by the prosecutor during his opening statement and that appellate counsel was ineffective for failing to raise this claim on direct appeal.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that to obtain relief by way of federal habeas corpus on a claim of a deprivation of effective assistance of counsel under the sixth amendment, the movant must establish both serious error and prejudice. To show such error, it must be established that the assistance rendered by counsel was constitutionally deficient in that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. The movant must show that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* at 687, 104 S.Ct. at 2064. To counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffectiveness must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. *See generally Nix v. Whiteside*, 475 U.S. 157, 165, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986); *Hill v. Lockhart*, 474 U.S. 52, 57–60, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985).

During a pretrial sidebar, the trial court instructed the prosecutor to be careful not to inject evidence of unrelated criminal activities in this trial. During an opening statement, the prosecutor related that evidence would show that when the police attempted to stop petitioner for questioning, he fled and, when cornered, pulled out a sawed-off shotgun and shots were fired. Petitioner maintains that the statement was so inflammatory that it prejudiced him in the eyes of the jury and that the prosecuting attorney committed prosecutorial misconduct by blatantly disregarding the court's admonitions not to refer to petitioner's prior criminal history.

The trial court conducted a PCHA evidentiary hearing on this issue and concluded: 1) there was no intentional misconduct on the prosecutor's part; 2) any references to unrelated criminal conduct were harmless beyond a reasonable doubt; and 3) because of the foregoing, defense counsel were not ineffective for failing to raise this issue. While defense counsel testified at the PCHA hearing, he could not remember and, therefore, stated no reason why he failed to object.

Federal courts have no general supervisory powers over state trial proceedings. To present a federal constitutional question, the prosecutorial conduct must be so egregious that, viewed in the context of the entire trial, the remarks were sufficiently prejudicial as to violate the defendant's due process rights. *Donnelly v. DeChristoforo*, 416 U.S. 637, 639, 94 S.Ct. 1868, 1869, 40 L.Ed.2d 431 (1974). A federal habeas court must distinguish "between ordinary trial error of a prosecutor and that sort of egregious misconduct held in *Miller* and *Brady* to amount to a denial of due process." *Id.* at 647, 94 S.Ct. at 1873 (citing *Miller v. Pate*, 386 U.S. 1, 6–7, 87 S.Ct. 785, 787–88, 17 L.Ed.2d 690 (1967) (prosecution knowingly used false evidence), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecution withheld possibly exculpatory evidence)). At the most, the prosecutor's statement was trial error which does not rise to the level of constitutional due process.

Even were we to find that the prosecutor's statement rose to a constitutional level, we would be compelled to find the error harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Once we concluded that petitioner's inculpatory statement was properly admitted, we can reach no other conclusion than that the ample evidence supporting his conviction outweighs any prejudice he may had suffered by the prosecution's statement.

## F. *Waiver of Right to Testify*

■ Petitioner challenges the effectiveness of trial counsel,[3] alleging counsel per-

---

**3.** Petitioner also alleges that appellate counsel was ineffective for failing to raise this issue on direct appeal.

suaded petitioner to waive his right to testify and failed to solicit an on-the-record colloquy showing a knowing and intelligent waiver of such right. This issue was also addressed at the PCHA evidentiary hearing, at which trial counsel again indicated he did not remember discussing with his client the decision to testify, but that he would probably have advised his client not to testify. The trial court concluded counsel's advice was reasonable because counsel had heard his client testify at a suppression hearing, and had evaluated his credibility and demeanor there. More importantly, had petitioner taken the stand, he would have been subject to cross-examination and the substance of his inculpatory statement highlighted.

In *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Supreme Court explicitly confirmed that criminal defendants have a constitutional right to testify on their own behalf.[4] Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("The accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to . . . testify in his or her own behalf . . ."). Moreover, the defendant's waiver of his right to testify, like his waiver of other constitutional rights, should be made voluntarily and knowingly. *Cf., e.g., Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) ("waiver of right to counsel must be intelligently and competently made.")

Here, petitioner made no objection when his counsel rested without calling him to the stand. "The accused must act affirmatively" in these circumstances. *United States v. Systems Architects, Inc.*, 757 F.2d 373, 375 (1st Cir.1985), *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985); *cf. United States v. Janoe*, 720 F.2d 1156, 1161 n. 9 (10th Cir.1983) (right to testify not denied where, *inter alia*, "defendant made no objection to his attorney's statements that defendant would not testify and made no request to testify," *cert. denied*, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984)). The defendant may not, as petitioner did, indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was "overcome." *See Hollenbeck v. Estelle*, 672 F.2d 451, 453 (5th Cir.1982) (post-conviction displeasure with his attorney's advice does not change the basic constitutional determination), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982).[5] Contrary to petitioner's allegations, we find no case law which requires the trial court or trial counsel to elicit an on-the-record colloquy showing knowing and intelligent waiver of the right to testify. Petitioner's reliance on state case law is not binding on this court.

## G. *Evidentiary Rulings Challenged*

Finally, petitioner argues the trial court erred in allowing a handwriting expert to testify and in allowing certain hospital records into evidence.

In its case in chief, the Commonwealth entered into evidence a hospital record with petitioner's purported signature. The purpose of this admission was to show that petitioner had been in the hospital emergency room on the day of the assault. The

---

**4.** The Pennsylvania constitution also provides for a criminal defendant's right to testify, *see* Pa. Const. art. 1, § 9, and such right is further protected by the Pennsylvania statutory law. *See* 42 Pa.C.S.A. § 2501.

**5.** In contrast, cases in which the courts have found that the denial of a defendant's right to testify almost invariably involve situations where counsel has induced the defendant with threats of reprisal or impermissible actions by the trial judge. *See, e.g., United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 120 (3d Cir.

1977) (trial judge ruled that if defendant took stand his counsel would be permitted to withdraw; held to be an impermissible infringement of the defendant's right to testify and his right to counsel); *United States v. Poe*, 352 F.2d 639, 640–41 (D.C.Cir.1965) (defendant was deprived of a fair trial when he did not testify, because his counsel misinformed him of the consequences of taking the stand). In each of these cases, the record is clear that the defendant wanted to testify and so informed trial counsel.

**504**

Commonwealth also entered testimony by a handwriting expert which identified as petitioner's the signature on the hospital record. Petitioner alleges this evidence violated the "best evidence" rule.

As previously explained, evidentiary error in a state trial will justify habeas corpus relief only when the error is so egregious as to violate fundamental fairness. Nothing in the record suggests this error, if indeed it is error, raises to that level. Whether petitioner actually checked into the hospital emergency room is superfluous to petitioner's conviction. He was placed in emergency room by a witness and the challenged evidence is cumulative at best. Therefore, we find no basis for habeas relief.

On the basis of the discussion contained herein, finding no merit to petitioner's claims, his petition for writ of habeas corpus should be denied.

In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten days from the date of service to file objections to this report and recommendation.

Dated: April 18, 1989