IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Rahsaan Brooks,           :
              Appellant    :
                           :
          v.              :
                           :
Office of the District Attorney  :
and District Attorney,        :   No. 12 C.D. 2016
Stephen A. Zappala         :   Submitted: May 13, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: September 14, 2016


George Rahsaan Brooks (Brooks) appeals from the Allegheny County Common Pleas Court's (trial court) August 6, 2015 order dismissing his pro se complaint against the Allegheny County (County) District Attorney's Office and District Attorney Stephen A. Zappala (Zappala) (collectively, Defendants) (Complaint) as frivolous. Brooks presents two issues for this Court's review: (1) whether the trial court erred by circumventing Section 1405(b) of The County Code (Code);[1] and (2) whether the trial court erred by declaring that Brooks' Complaint was frivolous. After review, we affirm.

On September 30, 1975, Brooks was arrested.[2] Brooks further alleges in the Complaint that on October 1, 1975, Detective Robert Spozarski (Detective

---

[1] Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1405(b).

[2] According to the Complaint the arrest was "for an offense that had nothing to do with the instant case." Complaint ¶ 8. In his Complaint, Brooks essentially asserts that the prosecutors arrested him on September 30, 1975 for the assault and robbery of Michael Miller and are

Spozarski) arrested Brooks for the assault and robbery of Michael Miller (Miller).[3] According to the Complaint, Brooks was arraigned, but not for robbery or assault, nor was he placed in the county jail for such charges. *See* Complaint ¶ 10. Brooks further avers that Detectives Spozarski, Charles Lenz (Lenz), Pharris Hutton (Hutton), Robert McKay (McKay), Frank Amity (Amity) and Joseph G. Stotlrmyer (Stotlrmyer) questioned him on several occasions at police headquarters about "Freddy" and about identifying "Freddy" from a photo array, but Brooks refused, stating he would not talk without a warrant or court order. Complaint ¶ 11. Brooks alleges that the detectives told him they knew he was in the hospital with Miller and Freddy and, thus, wanted him to identify Freddy by full name and photo. *See* Complaint ¶ 11. Brooks also asserts in the Complaint that he was subpoenaed for Miller's November 18, 1975 Coroner's Inquest. Complaint ¶ 14. Brooks avers that the sole purpose for subpoenaing him was for Miller's family to see him, thereby allowing them to identify him in future court proceedings. *See* Complaint ¶ 14.

On September 17, 1980, Brooks was sentenced to life imprisonment.[4] "Since then [Brooks] has filed several unsuccessful [Post Conviction Relief Act[5] (]PCRA[)] Petitions."[6] Trial Ct. Op. at 1. According to the Complaint, Brooks sent Zappala several letters claiming his innocence and asking Zappala to review the

fabricating the October 1, 1975 date of arrest. In his brief, Brooks asserts that September 30, 1975 was the date the detectives testified before the Grand Jury. *See* Brooks' Br. at 9.

[3] It appears Brooks is using the term assault rather than the charge of murder. *See infra* note 4.

[4] *See* Trial Ct. Op. at 1. The record does not indicate on what charges he was sentenced, although Defendants' brief states that Brooks was convicted of robbery and murder in 1980. *See* Defendants' Br. at 2. However, the United States District Court in *Brooks v. Zimmerman,* 712 F.Supp. 496 (W.D. Pa. 1999), confirms that Brooks was indeed convicted of robbery and murder of the second degree for the robbery and death of Miller. "It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate." *Lycoming Cnty. v. Pa. Labor Relations Bd.*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007).

[5] 42 Pa.C.S. §§ 9541-9546.

[6] There is no verification of this statement in the record, although Defendants' brief references 11 previous PCRA petitions. *See* Defendants' Br. at 3.

record. *See* Complaint ¶ 16. Those requests were denied. *See* Complaint ¶ 16. Thereafter, Brooks asked the Pennsylvania Innocence Project to request materials from Zappala on his behalf, but those requests were also denied. *See* Complaint ¶ 16.

On January 26, 2015, Brooks filed a Misconduct Complaint against prior-County District Attorney Dugan (Dugan) and Assistant District Attorney Edward Fagan (ADA Fagan) for conspiring with the County Coroner's Office. However, the Misconduct Complaint was returned due to Brooks' failure to provide his criminal docket number and to include a formal petition or motion. *See* Complaint, Ex. C, C-1. In response, on July 15, 2015, Brooks filed the Complaint "request[ing] that [D]efendants be prosecuted by the Commonwealth, charging [D]efendants with willful and gross negligence in the execution of the duties of their office[.]" Complaint ¶ 48. In conjunction with the Complaint, Brooks filed a Petition for Leave to Proceed *In Forma Pauperis*. On August 6, 2015, the trial court dismissed the Complaint as frivolous, and the *In Forma Pauperis* request was dismissed as moot. Brooks appealed to the Pennsylvania Superior Court. By order filed January 6, 2016, the case was transferred to this Court.[7]

Brooks first argues that the trial court erred by circumventing Section 1405 of the Code, entitled Misconduct of district attorney. Initially, Section 102 of the Code specifies that the Code "does not apply to counties of the first, second A, or second classes." 16 P.S. § 102. Allegheny County is a second class county. *See DeFazio v. Civil Serv. Comm'n of Allegheny Cnty.,* 756 A.2d 1103 (Pa. Cmwlth. 2000). Thus, Section 1405(b) of the Code does not apply to Zappala.

---

[7] "Our scope of review is limited to determining whether constitutional rights have been violated, whether the trial court abused its discretion, or whether the trial court committed an error of law." *Lichtman v. Glazer,* 111 A.3d 1225, 1227 n.4 (Pa. Cmwlth. 2015).

Notwithstanding, Section 1405(b) of the Code provides:

> Upon complaint in writing, verified by oath or affirmation of the party aggrieved, made to the court in which any district attorney shall prosecute the pleas of the Commonwealth, charging such district attorney with wilful and gross negligence in the execution of the duties of his office, **the court shall cause notice of such complaint to be given to the district attorney and of the time fixed by the court for the hearing of the same**. If upon such hearing the court shall be of opinion that there is probable cause for the complaint, they shall hand over or commit the district attorney to answer the same in due course of law. If the court shall be of opinion that there is no probable cause for such complaint, they shall dismiss the same, with reasonable costs to be assessed by the court.

16 P.S. § 1405(b) (emphasis added). However,

> it is well established that liability for any true crime, where an offense carries with it a jail sentence, must be based exclusively upon personal causation; imposition of liability pursuant to a *respondeat superior* theory is impermissible and unconstitutional. . . . **Section 1405 [of the Code] does not provide for guilt on the basis of vicarious liability**, [because] it provides for imprisonment not exceeding one year[.]

*Leventry v. Tulowitski,* 804 A.2d 1281, 1284-85 (Pa. Cmwlth. 2002) (bold emphasis added).

In the instant case, the only parties named in the Complaint's caption are the District Attorney's Office and Zappala. Notwithstanding, Brooks alleges in the Complaint's body that ADA Fagan and Assistant District Attorney Peter Dixon (ADA Dixon) are also parties, thereby implying that the District Attorney's Office and Zappala are liable based on ADA Fagan's and ADA Dixon's actions. *See*

4

Complaint ¶¶ 5, 6. Indeed, there are only two Complaint allegations that reference Zappala.[8]

"Because Section 1405 [of the Code] does not provide for guilt on the basis of vicarious liability, . . . [Brooks] could not establish probable cause based on [the District Attorney's Office's[9]] supervision of [ADAs Fagan and Dixon]." *Leventry,* 804 A.2d at 1285. Under the circumstances, the trial court did not circumvent Section 1405(b) of the Code by dismissing the Complaint without a probable cause hearing.

Brooks next contends that the trial court erred when it determined that Brooks' Complaint was frivolous. We disagree. Pennsylvania Rule of Civil Procedure No. 240(j)(1) provides in pertinent part:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.
>
> *Note:* A frivolous action or proceeding has been defined as one that 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, [326] . . . (1989).

Pa.R.C.P. No. 240(j)(1).

Here, Brooks claims that his Complaint avers that he is a victim of a criminal conspiracy among city detectives, district attorneys and the coroner's office to punish and penalize him for refusing to cooperate with city detectives and district attorneys. He maintains that they willfully framed him. He further claims that

---

[8] Both allegations, which will be discussed more fully herein, aver that Zappala did not respond to Brooks' letters. *See* Complaint ¶¶ 16, 33.

[9] Clearly, Zappala, although a named party, cannot be vicariously liable because he was not the County District Attorney at the time of the ADAs' service.

Zappala was made aware of this manifest injustice when both Brooks and the Pennsylvania Innocence Project informed Zappala that he possessed evidence, to which Brooks was entitled, but which Zappala's predecessors refused to disclose in an effort to conceal the criminal conspiracy, police/coroner misconduct and miscarriage of justice. Brooks also contends that his Complaint declares that Zappala ignored the evidence, refused to cooperate, and failed to turn over exculpatory/mitigating evidence and to investigate. Thus, Brooks argues that his Complaint is not frivolous because its averments establish an arguable basis in law and fact that Zappala's actions amount to willful, gross negligence of office in violation of Section 1405(a) of the Code.

> Section 1405(a) of the Code provides:
>
> If any district attorney shall wilfully and corruptly demand, take or receive any other fee or reward than such as is prescribed by law for any official duties required by law to be executed by him in any criminal proceeding, or **if such district attorney shall be guilty of wilful and gross negligence in the execution of the duties of his office**, he shall be guilty of a misdemeanor in office, and, on conviction thereof, be sentenced to pay a fine not exceeding one thousand dollars and to undergo imprisonment not exceeding one year, and his office shall be declared vacant.

16 P.S. § 1405(a) (emphasis added). Only two of Brooks' 48 allegations in the Complaint concern Zappala:

> 16. [Brooks] sent several letters to [Zappala] informing him [as] to what had occurred and explaining to him [Brooks'] innocence. [Brooks] requested of [Zappala] to review the record and would clearly discover [sic] that [Brooks] is a victim of a conspiracy and manifest injustice. [**Zappala**] **willfully ignored** [**Brooks'**] **letters and his duty as the District Attorney**. Brooks also asked the Pennsylvania Innocence Project who is reviewing his case to request

6

these materials from [Zappala] and their [sic] request was denied. (See Exhibit 'B').[10]

. . . .

33. [Zappala] is continuing the conspiracy and willful gross negligence. [Brooks] wrote him six times explaining to him that he is a victim of a police, coroner, district attorney conspiracy, that he was wrongfully convicted and actually innocent of the crime [for which] he was convicted. He [asked] [Zappala] to look at the probable cause affidavit, arrest warrant, grand jury transcript, coroner hearing, voir dire and sentencing transcript and the affidavit [Exhibit 'A'] of Attorney Michael J. Healey.[11] When [Brooks] got no response from [Zappala], he sent him several more letters explaining to him that the particulars he asked him to review, were never turned over to him. [Brooks] then [asked] [Zappala] if he would furnish him with all or some of the particulars because he had the P[ennsylvania] Innocence Project investigating his innocence evidence. [Zappala] ignored [Brooks] again. [Brooks] then asked the P[ennsylvania] Innocence Project to ask[] [Zappala] for said particulars but [Zappala] would give them no help. [Exhibit 'B'] **[Zappala] is not at liberty to keep in place willful and gross negligence started and put in place by his predecessors. It is as much his duty to refrain or to keep in place improper actions calculated or started by his predecessors that produced a wrongful conviction as it is for him to use every legitimate means to bring about a just result or to undo a manifest injustice**.

Complaint ¶¶ 16, 33 (emphasis added). Viewing the Complaint's allegations as true, we hold that Zappala ignoring Brooks' letters does not permit an arguable basis in law or fact that Zappala was willfully or grossly negligent in the execution of the

_____

[10] Complaint Exhibit B is a letter from the Pennsylvania Innocence Project to Brooks concerning its representation of Brooks. It contains the following relevant sentence: "I still have not received any word back from Michael Healey, and the [County] District Attorney's Office was unhelpful." Complaint Ex. B at 1.

[11] The Affidavit of Michael J. Healey essentially states that Brooks' attorney received the Coroner's Inquest Transcript from Brooks, but the transcript was not included in the record received from the trial court. Further, Healey maintains in his Affidavit that the jury voir dire transcript was not a part of the trial court record. *See* Complaint Ex. A.

duties of his office. Those allegations, in and of themselves, establish nothing more than that Zappala did not respond to Brooks' review request letters. Because the Complaint contains no arguable basis in law or fact, the trial court did not err by declaring that Brooks' Complaint was frivolous.

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge


Judge McCullough did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George Rahsaan Brooks,        :
              Appellant    :
                            :
           v.                :
                            :
Office of the District Attorney   :
and District Attorney,         :   No. 12 C.D. 2016
Stephen A. Zappala         :

## O R D E R

AND NOW, this 14th day of September, 2016, the Allegheny County Common Pleas Court's August 6, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge