UNITED STATES of America

v.

Lawrence WRIGHT, Appellant.

No. 89–1976.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Nov. 5, 1990.

Decided Dec. 13, 1990.

Jack Meyerson, Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Jeffrey M. Klink, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SLOVITER, SCIRICA and ALITO, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Lawrence Wright appeals from a judgment of conviction and sentence for conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and five counts of using a telephone to facilitate the narcotics conspiracy, in violation of 21 U.S.C. § 843(b). Wright raises two issues; he complains (1) that the district court improperly denied his request for a jury charge of entrapment, and (2) that the court committed plain error in its instructions with regard to how the jury should evaluate the testimony of a confidential informant.

## I.

### Background Facts and Procedural History

The basis of Wright's entrapment claim centers on the activity of the government informant, Everton Davis. Davis, who was indicted by a federal grand jury in Florida for obtaining firearms illegally, a violation of Davis' state probation requirement, entered into a plea agreement with the federal government, which included Davis' undertaking to cooperate with the government. The government sought to ascertain with whom Davis had had "business dealings" and "what kind of transaction[s] [Davis] w[as] making ... in Philadelphia." App. at 144.

Pursuant to his obligation to cooperate, Davis placed a series of phone calls from Florida to Wright in Philadelphia. Davis and Wright had previously been involved in transactions involving marijuana. An agent from the Division of Alcohol, Tobacco, and Firearms (ATF) in Florida was with Davis during each phone call and each was recorded by the Bureau. In the first such recorded call, made February 5, 1989, Davis told Wright that he was coming up to Philadelphia the next week, and stated "me try for, take care of some things" and "me don't want to come up empty handed," App. at 510, which Davis testified meant that he did not want to go to Philadelphia without some drugs. App. at 153. Wright replied that Davis should "bring some business along" with him. App. at 510. Davis asked Wright "what da ya think we should bring," and Wright responded "the powder business," App. at 511, which Davis testified referred to cocaine, App. at 121. Davis asked Wright to call someone from

West Palm Beach from whom he could get a better price on cocaine. Wright told Davis, "give me the number," App. at 514 [Davis' number for a return call, App. at 167], and when Davis was not able to, Wright told Davis "call me back about six." *Id.*

In the series of phone calls which followed, Davis always called Wright, and an ATF agent was always present. After preliminary arrangements were made for a cocaine deal, Davis travelled from Florida to Philadelphia accompanied by agents from the ATF. Davis called Wright from North Carolina, told him he was bringing "6 of them," App. at 532, which Davis explained at trial meant six kilos of cocaine. App. at 133–34. Wright responded, "yeah I went and talked to some people ya know ... and were interested ya know." App. at 532.

When Davis arrived in Philadelphia, the agents coordinated their activities with the Philadelphia Police Department. After Davis obtained a hotel room in Philadelphia, he gave Wright his phone number and Wright called Davis to make the final arrangements for the purchase of the cocaine Davis was to supply. The transaction resulted in Wright's arrest and the subsequent indictment.

## II.

### Entrapment Charge

At the conclusion of the introduction of all the evidence, Wright requested that the jury be charged on an entrapment defense. The district court refused on the ground that there was no "showing of a lack of predisposition" on the part of Wright. App. at 362. In a memorandum in response to Wright's post-trial motions, the district court reviewed the evidence which Wright argued supported an entrapment defense and concluded that all the evidence pertained to "inducement" by the government, and that there was no evidence concerning a lack of predisposition. Therefore, the court concluded that the entrapment charge was not warranted.

■ The court's failure to charge the jury with an entrapment instruction involves a matter of law, *United States v. Bay*, 852 F.2d 702, 705 (3d Cir.1988), and our review is accordingly plenary. *United States v. Fedroff*, 874 F.2d 178, 182 (3d Cir.1989).

■ Entrapment is a " 'relatively limited defense' that may defeat a prosecution only 'when the Government's deception actually implants the criminal design in the mind of the defendant.' " *Fedroff*, 874 F.2d at 181 (quoting *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973)). A valid entrapment defense has two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); *Fedroff*, 874 F.2d at 181; *Bay*, 852 F.2d at 704. The defendant has the burden of producing evidence of both inducement and non-predisposition to commit the crime. *Fedroff*, 874 F.2d at 182; *United States v. Marino*, 868 F.2d 549, 551 n. 3 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). "After the defendant has made this showing, ... the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." *Marino*, 868 F.2d at 552 n. 6 (quoting *United States v. El–Gawli*, 837 F.2d 142, 145 (3d Cir.1988)); *United States v. West*, 511 F.2d 1083, 1086–87 (3d Cir.1975). We have held that the trial court should not instruct on entrapment unless the defendant has presented evidence on both prongs of the defense. *Fedroff*, 874 F.2d at 182.

■ In support of his assertion that he produced sufficient evidence of both lack of predisposition and inducement, Wright points to the fact that Davis made the call and was the first to raise anything related to drugs, that Davis initiated each of the phone calls, and that when Wright declined to go down to Florida, Davis undertook to bring the drugs to Wright in Philadelphia. Wright points to Davis' testimony that as far as Davis knew, Wright had never previ-

ously dealt in cocaine. Wright argues that Davis and an undercover officer suggested it was more lucrative to deal in cocaine and less dangerous rather than marijuana, that Wright was reluctant to commit the offense, and that throughout the transaction the government operatives kept it on track.

Although it is clear that "inducement by law enforcement officials may take many forms, 'including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship,'" *Fedroff*, 874 F.2d at 184 (quoting *El–Gawli*, 837 F.2d at 149), we have held that mere solicitation by the government, without more, is not "inducement." *Marino*, 868 F.2d at 552 n. 6. Thus, the mere fact that Davis, acting as an agent, first suggested the criminal activity is not enough to show inducement.

Wright stresses that it was Davis who initiated all the phone contacts with Wright until Davis was in Philadelphia, and points to evidence that he claims shows that the government was determined to see the deal go through. Without deciding the issue, we will assume *arguendo* that the heavy governmental involvement from the inception of the transaction until Wright's arrest is sufficient to satisfy Wright's burden of production on the inducement prong.

■ Generally, the entrapment defense centers on the evidence adduced to meet the burden on the non-predisposition prong. "The entrapment defense theorizes that an individual not otherwise predisposed to criminal conduct was corrupted by some inducement on the part of the law enforcement officer. Thus, the focus is on the intent or predisposition of the defendant to commit the crime." *United States v. Berkery*, 889 F.2d 1281, 1283 (3d Cir.1989). *But see United States v. Pervez*, 871 F.2d 310, 317 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989) (holding evidence of inducement insufficient to warrant entrapment charge).

In *Fedroff*, we stated that predisposition "may be defined as the defendant's inclination to engage in the crime for which he was charged, ... measured before his ini-

tial exposure to government agents." 874 F.2d at 182 (citations omitted). We approvingly noted the factors used by the Ninth Circuit in *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1336 (9th Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978), while noting that none of the factors alone indicates either the presence or absence of predisposition. The factors referred to there were:

[1] the character or reputation of the defendant, including any criminal record;

[2] whether the suggestion of criminal activity was initially made by the Government;

[3] whether the defendant was engaged in the criminal activity for profit;

[4] whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and

[5] the nature of the inducement or persuasion supplied by the Government.

*Fedroff*, 874 F.2d at 183 (quoting *Reynoso–Ulloa*, 548 F.2d at 1336). An analysis of these factors shows that they verge on inducement as well as predisposition.

In any event, at most Wright has produced evidence that Davis, acting in this respect as a government agent, initially suggested the criminal activity. In this case, as in *United States v. Gambino*, 788 F.2d 938, 946 (3d Cir.), *cert. denied*, 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986), the evidence shows a willingness to enter into the cocaine transaction. Indeed, it was Wright who suggested bringing up the cocaine to Philadelphia. The tapes do not support appellant's statement that he expressed an uncertainty as to whether he wanted to traffick in cocaine, as distinguished from marijuana. Davis merely asked Wright what he was paying for a form of marijuana and, after hearing the price, told him he was wasting his time taking a risk for nothing. Although Wright responded that because he didn't have a green card (immigration permit), "I cannot ... move the way I like to do," App. at 573, this does not, by any stretch of

imagination, translate into reluctance to enter into the cocaine transaction, and appellant points to no other evidence to show reluctance. Indeed, Wright told Davis with respect to a possible cocaine transaction, "don't deal with him unless me there with you ya know." App. at 539.

This evidence distinguishes this case from *Fedroff,* on which Wright heavily relies. *Fedroff,* the acting superintendent of public works in North Arlington, was convicted of mail fraud, extortion, and accepting kickbacks. Although there was evidence that Fedroff received money from a municipal supply firm, government agents testified that Fedroff never requested money or kickbacks. Fedroff also produced evidence relating primarily to his good reputation and lack of prior involvement in this kind of illegal activity.

We recognized that Fedroff's evidence of non-predisposition was not substantial, especially in light of the lack of evidence concerning his reluctance to accept kickbacks. We noted that the Ninth Circuit was unable to find any case in which the defense of entrapment was successful where the defendant had not indicated reluctance to engage in criminal activity. *Fedroff,* 874 F.2d at 184 n. 5 (citing *Reynoso–Ulloa,* 548 F.2d at 1336 n. 11). We need not decide that here because the evidence produced by the government shows Wright's ready receptiveness to participation in the cocaine transactions charged. The evidence of Wright's non-predisposition was thus insufficient to support the requested entrapment charge.

### III.

#### *Accomplice or Informant Credibility Instruction*

Wright did not request an instruction concerning Davis' "informant" testimony at trial. Consequently, Wright has waived appeal of his objection that the court should also have cautioned the jury as to how they should evaluate such testimony, unless the failure to so instruct the jury amounted to plain error. *See* Fed.R. Crim.P. 30.

Plain error is error which not only affects substantial rights but has an unfair prejudicial impact on the jury deliberations. *Pervez,* 871 F.2d at 315 & n. 4 (citing *United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)). Plain error is found only when the error "is the kind of error which affects the 'fairness, integrity or public reputation of judicial proceedings' or results in a miscarriage of justice." *Berkery,* 889 F.2d at 1283 (quoting *Young,* 470 U.S. at 15, 105 S.Ct. at 1046).

Wright maintains that the failure to give the jury special instructions as to how they should evaluate the credibility of Davis, a government informant who testified in exchange for a more lenient sentence, amounts to plain error because Davis' testimony was heavily relied upon by the government. Wright argues this case is similar to *United States v. Bernal,* 814 F.2d 175, 182–84 (5th Cir.1987), where the award of a new trial was based on the failure to give an accomplice charge.

*Bernal* is inapposite. There, unlike here, defendant requested a special instruction and therefore there was no plain error issue. Moreover, in *Bernal* the accomplice's testimony was entirely uncorroborated and, in fact, contradicted by other testimony. The basis for an accomplice instruction is concern about the unreliability of testimony that has been bartered for some personal advantage. *See United States v. McCabe,* 720 F.2d 951, 955 (7th Cir.1983). It follows, as it is generally held, that such a concern is allayed when there has been material corroboration of the accomplice testimony. *See* cases cited at *id.* Accordingly, we hold that there can be no plain error for failure to give an unrequested accomplice instruction if the accomplice's testimony has been significantly corroborated.[1]

In this case, the corroborating evidence of Wright's involvement in the cocaine transaction and the events leading thereto

---

1. We leave for another day the relevance of the other factors referred to in the *Bernal* court's *dictum* on plain error for an accomplice instruction. *See* 814 F.2d at 184 n. 19.

consists of Wright's own conversation on the tapes of the telephone conversations with Davis. The government also introduced testimony of two other government agents who spoke with Wright and provided him with a sample of the cocaine that was going to be sold.

Moreover, the jury was well aware of Davis' status as an informant. Davis testified about his plea agreement with the government. This was covered in depth by the government on direct examination and again by defense counsel on cross-examination. In fact, the court cautioned the jury concerning its use of the parts of Davis' testimony concerning other crimes, particularly Wright's prior marijuana and firearm dealings with Davis. In addition, the court instructed the jury that they could consider the interest that witnesses have in the outcome of the trial because such witnesses "may shade things a bit in their own behalf." App. at 432. *See United States v. Ridinger*, 805 F.2d 818 (8th Cir.1986) (failure to instruct jury that paid informant's testimony should be considered with caution did not require reversal because other aspects of court's charge directed jury as to how they should consider influences on informant's testimony).

We conclude that in this case the failure to give a separate informant or accomplice instruction does not amount to plain error.

## IV.

### Conclusion

For the reasons set forth above, we will affirm the judgment of conviction and sentence.