**UNITED STATES of America**

v.

**Jose ROBLES and Jose Croussett.**

**Crim. No. 92–00047.**

United States District Court,
E.D. Pennsylvania.

Feb. 22, 1993.

Nancy B. Winter, Asst. U.S. Atty., Philadelphia, PA, for Government.

Margaret Poswistilo, Easton, PA, for Robles.

Diane Elliott, Easton, PA, for Croussett.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

On April 22, 1992, following a two-day jury-trial before this court in Easton, Pennsylvania, defendants Jose Robles and Jose Croussett were both found guilty of conspiring to distribute cocaine-base and possessing cocaine-base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. Defendant Robles was found not guilty of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Presently before this court are post-trial motions by both defendants for a new trial. Neither defendant has been sentenced.

## FACTUAL BACKGROUND

The following facts were elicited during trial from the testimony of Detectives Chaves, Perricone, Clements and Reynolds, all members of the Philadelphia District Attorney's Office, Narcotics Unit.

On December 2, 1991, the Philadelphia District Attorney Narcotics Unit received information from a confidential informant that two Hispanic males would be in the Burger King parking lot located at 100 West Erie Avenue at approximately 3:30 p.m. with a quantity of cocaine-base ("crack") to sell. The Narcotics Unit was informed that the two males would be operating a blue Chevrolet Monte Carlo and a blue Buick Regal. Detective Freddie Chaves, in an undercover capacity, was to pose as a drug buyer and purchase between 4½ and 9 ounces of crack.

At approximately 3:20 p.m., several other detectives arrived at the Burger King parking lot and set up surveillance. Approximately five minutes later, the detectives observed a blue Buick enter the parking lot followed immediately by a blue Monte Carlo. As the detectives watched, the drivers parked the two cars near each other. Defendant Jose Robles exited the blue Monte Carlo and defendant Jose Croussett exited the blue Buick. The two men then walked over to a silver Chevrolet with tinted windows. Defendants Robles and Croussett spoke briefly to the occupant of the silver Chevrolet before they entered the back seat of the car. Approximately a minute later, defendant Robles exited the car, walked back to the blue Buick originally driven by defendant Croussett and drove off the parking lot.

Between five and ten minutes later, defendant Robles returned to the parking lot and re-entered the silver Chevrolet. The surveillance detectives, who were in radio communication with Detective Chaves, relayed this information to the undercover detective. Detective Chaves then entered the parking lot and walked over to the unoccupied blue Buick. As the surveillance detectives observed, defendants Robles and Croussett exited the silver Chevrolet and together approached Detective Chaves. The undercover officer told defendants Robles and Croussett that he was instructed to meet two males driving a blue Monte Carlo and a blue Buick. Robles and Croussett told the detective that they were the males.

Detective Chaves then asked the defendants if they had the "cook stuff" (crack) and remarked that he had enough money for nine ounces. Defendant Robles informed the undercover officer that they had only 6½ ounces and the price would be $4,700.00. After Detective Chaves asked to see the crack, defen-

dant Croussett asked the detective whether he had the money. Detective Chaves said he did but insisted that the defendants show him the crack before proceeding. Defendant Robles agreed. As defendant Robles was opening the passenger-side door of the blue Buick to show the detective the drugs, a marked police car entered the Burger King parking lot. Both Detective Chaves and defendant Croussett warned defendant Robles of the marked police car.

After the marked police car left the parking lot, defendant Robles told defendant Croussett to show the crack to Detective Chaves, while he acted as a lookout. Defendant Croussett then entered the driver's-side of the blue Buick while both Croussett and defendant Robles instructed Detective Chaves to enter the passenger-side of the car. Meanwhile, defendant Robles assumed a position at the rear of the Buick where he could act as lookout. With Detective Chaves seated in the front passenger seat, defendant Croussett reached under the front seat and brought out a brown paper bag, which he then handed to the detective. Detective Chaves opened the bag, looked into it and removed a large baggie containing an off-white chunky substance which he believed to be crack.

Acting as if he had forgotten the purchase price, Detective Chaves asked the cost. Defendant Croussett responded, telling the detective that the price was $4,700.00, whereupon Detective Chaves asked defendant Croussett if he could give him a better price since the detective would be buying more from the two defendants in the future. Defendant Croussett signaled to defendant Robles, who approached the driver's-side door of the Buick, and the two defendants had a brief conversation regarding the price. Defendant Robles indicated to defendant Croussett that they might be able to offer Detective Chaves a better price next time. Defendant Croussett relayed this to Detective Chaves. The detective then agreed to purchase the crack for $4,700.00.

Detective Chaves returned the brown bag containing the crack to defendant Croussett, who placed the bag under the front seat. The detective then exited the Buick under the guise of returning to his vehicle to retrieve the money. Once outside the car, Detective Chaves gave a pre-arranged signal, whereupon the backup officers proceeded towards the blue Buick and assisted Detective Chaves in arresting the defendants. The detectives confiscated the brown paper bag containing the off-white chunky substance from the blue Buick. The off-white chunky substance was tested by the Philadelphia Police Department Chemistry Laboratory, which established it to be cocaine-base (crack) weighing 171.1 grams. During the course of the arrest, the detectives searched the defendants and confiscated the car keys and ownership documents to the blue Chevrolet Monte Carlo and to the blue Buick Regal from defendant Robles and defendant Croussett, respectively.

Following the arrest, Detective Clements entered the blue Chevrolet Monte Carlo driven to the parking lot by defendant Robles, for the purpose of transporting the vehicle to a secure location. As the detective depressed the accelerator, he felt a lump, looked down on the floor and noticed a clear plastic packet containing a white powder substance. Detective Clements confiscated the packet. The white powder was also tested by the Philadelphia Police Department Chemistry Laboratory and was found to be cocaine weighing 54.5 grams.

Based on the foregoing facts, defendants Robles and Croussett were charged by a grand jury in a three count indictment. Count One charged co-defendants Robles and Croussett with knowingly and unlawfully conspiring to distribute in excess of fifty grams of cocaine-base. 21 U.S.C. §§ 841(a)(1), 846. Count Two charged Robles and Croussett with knowingly and intentionally possessing with the intent to distribute more than fifty grams of cocaine-base. 21 U.S.C. § 841(a)(1). Count Three charged Robles with knowingly and intentionally possessing with the intent to distribute approximately sixty grams of a mixture or substance containing a detectable amount of cocaine. 21 U.S.C. § 841(a)(1). A two day jury-trial was held in which the defendants were found guilty of Counts One and Two of the indict-

ment. Defendant Robles was found not guilty of Count Three.

On September 16, 1992, nearly five months after trial, defendant Croussett filed a motion, *pro se*, for a new trial. Subsequently, on November 18, 1992 Croussett again filed a motion for a new trial, this time through his new attorney. Defendant Croussett bases his motion on: (1) the alleged ineffectiveness of his trial counsel; (2) the court's alleged error in permitting Government witnesses to refer to conversations occurring prior to the police arriving on the crime scene; and (3) the defendant's unknowing waiver of his right to testify. Defendant Croussett also filed a motion for disclosure of the confidential informant.

Similarly, on October 21, 1992, approximately six months after trial, defendant Robles filed a motion for a new trial. This motion is based on the following grounds: (1) the alleged ineffectiveness of his trial counsel; (2) the court's alleged error in refusing to order disclosure of the identity of the confidential informant; (3) the court's alleged error in allowing the defendant to waive his right to testify without ascertaining that the waiver was knowing and voluntary; (4) that the defendant has uncovered exculpatory evidence that was not available to him at the time of trial; and (5) in the interests of justice.

1. Rule 33 provides, in relevant part, that:
 The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice ... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period.
 Fed.R.Crim.P. 33.

2. In support of his claim of newly discovered evidence, Robles submits his affidavit asserting that defendant Croussett admitted to a person in prison that he did know Robles prior to the arrest, that Robles had nothing to do with the crime and the he was sorry that Robles had been arrested and convicted for the crime. In order to obtain a new trial based on newly found evidence, the defendant must demonstrate (1) that the evidence came to their knowledge only

On November 20, 1992, we held a hearing to give the defendants a full opportunity to present evidence in support of their claims. At the hearing, defendant Robles and the former attorneys for both defendants gave extensive testimony. After giving careful consideration to that testimony, defendants' motions and accompanying papers, and the evidence elicited at trial, we deny the defendants' motions for a new trial and defendant Croussett's motion for disclosure of the confidential informant for the reasons stated below.

## DISCUSSION

The defendants raise several overlapping challenges to their convictions. To the extent possible, we will consider these challenges together.

*1. Defendants' Motions For a New Trial*

■■■ Each defendant has brought a motion for a new trial based primarily on claims of ineffective assistance of counsel and alleged errors committed by this court. We note initially that a motion for a new trial must be made within seven days after the verdict, unless the trial court grants an extension of time within these seven days. Fed.R.Crim.P. 33.[1] The only exception to this rule is where the motion is based on "newly discovered evidence." *Id.*[2] Where,

after trial; (2) facts from which the court may infer diligence on the part of the defendant; (3) that the evidence is material and not merely impeaching or cumulative; and (4) that it would probably lead to an acquittal in the event of a retrial. *United States v. Herman,* 614 F.2d 369, 371 (3d Cir.1980). The fourth requirement "presupposes, of course, that the proffered new 'evidence' would be admissible at the new trial." *United States v. Parker,* 903 F.2d 91, 102–03 (2d Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). Croussett's statements to a third person are inadmissible hearsay. Fed. R.Evid. 801, 802. In addition, there is no affidavit in the record from defendant Croussett of his admission, nor even a suggestion that he intends to testify. We believe that defendant Croussett would be reluctant to testify, or even to furnish an affidavit, since he has consistently maintained his innocence. Furthermore, post-conviction exculpatory statements of a co-conspirator are inherently suspect, *United States v. Benavente Gomez,* 921 F.2d 378, 383 (1st Cir.1990) ("[A]ttempts by one defendant to take full responsibility after trial and conviction are common and are

as here, the motion for a new trial is based on facts known to the defendant at the time of trial, it is not based on "newly discovered evidence" and is untimely if filed more than seven days after the verdict.[3] *United States v. Ellison,* 557 F.2d 128, 132–33 (7th Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977). Accordingly, the motions for new trial made by defendants Robles and Croussett are untimely.[4] Because the time limits of Rule 33 are jurisdictional, we are without authority to entertain these motions. Nonetheless, in the interest of judicial economy, we find that even if the motions were timely made, they would be denied because, as discussed below, disclosure of the confidential informant is not warranted and defendants have not established their claim of ineffective assistance of counsel.[5]

### 2. *Confidential Informant*

Both defendants rest their claims for a new trial on the disclosure of the confidential informant. Defendant Croussett brings a motion for disclosure approximately *seven months* after conviction. Defendant Robles assigns error to the court's alleged "refusal" to order disclosure of the informant's identity. Given that no motion for disclosure has ever been brought in this case by either defendant, we cannot comprehend Robles' placement of error.

Defendant Croussett has moved for disclosure of the name, address, criminal and psychiatric record and drug habits of the informant. Defendant maintains, without support, that the informant "orchestrated", "actively participated" and "witnessed" the conduct that the Government alleges is criminal; therefore, this court must order disclosure because the informant can give testimony that is relevant and material to the defense. The Government opposes this motion, based upon the informer's privilege.

The "informer's privilege" permits the Government to withhold from disclosure the identity of persons who furnish information of crime to law enforcement officers. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The Supreme Court has described the privilege as follows:

> A genuine privilege, on ... fundamental principle ..., must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to

viewed with skepticism."), and would not overcome the substantial evidence of Robles' involvement in the crime. At the very least, Robles fails to satisfy the fourth *Herman* requirement and, therefore, is not entitled to a new trial on the grounds of newly discovered evidence. *See United States v. Kamel,* 965 F.2d 484 (7th Cir.1992).

3. Furthermore, because the motions were filed more than seven days after return of the guilty verdict, this court is without jurisdiction to grant a new trial using the "in the interest of justice" standard. *United States v. DiBernardo,* 880 F.2d 1216, 1223 (11th Cir.1989). Therefore, defendant Robles' reliance on this standard is misplaced.

4. Although we could consider defendants' claims as petitions for relief from their conviction under 28 U.S.C. § 2255 (1971), *United States v. DiBernardo,* 880 F.2d 1216, 1226 (11th Cir.1989), we refrain from doing so for two reasons. First, a § 2255 petition would be premature at this point since the defendants have not yet been sentenced and therefore are not "in custody under sentence" as required by the statute. *Cf. United States v. Bonansinga,* 855 F.2d 476, 477 (7th Cir.1988). Second, to the extent the defendants assign error to certain rulings of this court, the proper remedy is an appeal, not a collateral attack. *Cf. Government of Virgin Islands v. Nicholas,* 759 F.2d 1073, 1074 (3d Cir.1985).

5. The standard a court must apply in ruling on a motion for new trial are well known:

> Motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion.
> . . . .
> The remedy of a new trial is sparingly used, and then only where there would be a "miscarriage of justice ... and where 'the evidence preponderates heavily against the verdict.'"

*United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979) (citations omitted).

preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.

That the government has this privilege is well established, and its soundness cannot be questioned. (citations omitted.)

*McCray v. Illinois,* 386 U.S. 300, 308–09, 87 S.Ct. 1056, 1061, 18 L.Ed.2d 62 (1967).

■■ In determining whether to require disclosure, no fixed rule exists. *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 629. Rather, the court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. *Id.* The court should consider the particular circumstances of each case, including the nature of the crime charged, the possible defenses, and the possible significance of the informant's testimony. *Id.* The defendant has the burden of establishing the significance of the informant's testimony. *United States v. Jiles,* 658 F.2d 194, 197 (3d Cir.1981), *cert. denied,* 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 465 (1982). Once the defendant sets forth a specific need for disclosure the court should then undertake the balancing test. *Id.*

In *Jiles,* the Third Circuit identified three types of cases which arise when applying the *Roviaro* test. First, an extreme situation such as in *Roviaro* where the confidential informant played an active and crucial role in the events underlying the defendant's criminal liability. Disclosure of the informant is often required in these cases to ensure a fair trial. *Id.* Second, the opposite extreme where the confidential informant was not an active participant or eyewitness but rather a mere tipster. Disclosure is generally not required in these cases. *Id.* Third, where the informant's role falls between the two extremes described above. For example, like the confidential informant in *Jiles,* where the informant was an eyewitness but did not participate in the criminal activity. Here, the balancing becomes more difficult to apply. *Id.*

Defendants have failed to meet their burden for disclosure of the informant's name. Defendants assert that the informant may have been an active participant and an eyewitness to certain conduct and the informant's testimony may be helpful to the defense. However, "mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro.*" *Id.* (citations omitted); *United States v. Estrella,* 567 F.2d 1151, 1153 (1st Cir.1977) (no disclosure where informant did not deal directly with defendant nor was significant participant in criminal events). "The defendant must indicate some concrete circumstances that might justify overcoming both the public interest in encouraging the flow of information [from informants to law enforcement] and the informant's private interest in his [or her] own safety." *Estrella,* 567 F.2d at 1153 (citations omitted). The defendants have done neither; thus, their motion for disclosure of the informant must be denied.

Furthermore, our review of the record reveals that the confidential informant was neither present nor an eyewitness.[6] We believe the record supports the Government's assertion that the confidential informant was nothing more than a mere tipster or, at most, a

---

6. Contrary to the record, the defendants speculate that the confidential informant was the unidentified driver of the silver Chevrolet. Detective Perricone, one of the surveillance detectives, testified that the detectives did not get a clear look at the driver and were unable to read the weather-beaten paper license plate of the car. (4/21/92 Tr. at 149). The detective also testified that the silver Chevrolet left the Burger King parking lot before the drug transaction and that the detectives had no grounds to stop the vehicle. (*Id.* at 155). Likewise, Detective Chaves testified at the evidentiary hearing that he did not see the confidential informant at the scene and specifically instructed the informant not to be anywhere in the area. (11/20/92 Tr. at 103–04). In addition, if anyone knows the identity of the driver of the silver Chevrolet, it is the defendants, not the Government.

minimal participant. The record discloses that the informant was simply an individual who, knowing that the defendants were selling drugs, informed the Philadelphia District Attorney's Office that they could go to the Burger King parking lot, pose as drug purchasers and purchase crack from two Hispanic males, so that the police, acting independently, could procure evidence of the crime. There is no evidence that the confidential informant participated with the defendants in the very transaction upon which the Government relies to prove its case. Significantly, the record reveals that the Government did not rely upon evidence of the defendants' conversations or meetings with the confidential informant to prove that the defendants possessed and conspired to sell crack. The only testimony elicited on direct examination as to the content of the communication with the confidential informant was introduced for the purpose of establishing the agents' presence in the Burger King lot on December 1, 1991.[7]

██ Defendant Croussett also claims, for the first time, that he was set up by the confidential informant and that the informant's testimony would be relevant to an entrapment defense. The mere allegation of entrapment, however, is not alone sufficient to justify allowing disclosure. A defendant must present some evidence of entrapment[8] before the defense is properly raised, and, until the defense is properly raised, a court need not order the Government to disclose the identity of the informant. *United States v. Kerris,* 748 F.2d 610, 614 (11th Cir.1984); *see also United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir.1985), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986) (District court should not compel *in camera* interview of confidential informant unless the defendant first produces some evidence supporting his entrapment defense.).[9]

Accordingly, disclosure of the confidential informant is not warranted in this case. To require disclosure of a confidential informant upon the unsupported allegations of a defendant would substantially and unnecessarily compromise the privilege and its underlying public policy. For these reasons, defendant Croussett's motion for disclosure is without merit and, if timely made, would have been denied. Similarly, defendant's claim that trial counsel was ineffective for failing to file a motion for disclosure must also be rejected. *United States v. Nolan,* 910 F.2d 1553, 1564 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991) ("It is not ineffective assistance for counsel not to file a meritless motion."). During the evidentiary hearing, defendant Robles' trial counsel, with whom Croussett's counsel discussed such a motion, clearly stated his reasons for not pursuing a motion for disclosure.[10] As described above, we agree with trial counsel's evaluation.

---

7. Assuming, nonetheless, that the informant's involvement was more than that of a mere tipster, we still find that disclosure is inappropriate because the record contains no indication that the informant's testimony would be helpful to the defense.

8. "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. Predisposition, 'the principal element in the defense of entrapment' focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (citations omitted).

9. At the evidentiary hearing, we also heard the Government's objection to the Presentence Report. The Government asks us to consider, un-

der U.S.S.G. § 2D1.2, that the drug transaction occurred within 1000 feet of a playground. Defendant Croussett maintains that disclosure of the confidential informant is required because the informant's testimony may be relevant to who chose the location of the drug transaction. In addition, Croussett argues that the informant's testimony may establish that the Government's involvement, although not rising to the level of entrapment, may be a grounds for a downward departure. (11/20/92 Tr. at 102, 185). Once again, speculation does not carry the day for the defendant.

10. Q. In the area of—the confidential informant, you had made some pre-trial motions with respect to the confidential informant. Did you ever consider making a Motion to Order Disclosure of the confidential informant?

A. Yes I did.
Q. And what analysis did you go through and what decision did you make?

■ Defendant Croussett's request for the informant's criminal and psychiatric record and drug habits indicates to us that Croussett believes that he should have the opportunity to question the informant to establish his bias and impeach his testimony and credibility. Defendant's argument again is essentially grounded in speculation. Our examination of the record discloses nothing that would support the defendant's suggestion that he could have impeached the informant, particularly when the informant's testimony was not used in the first place. *United States v. Martinez*, 979 F.2d 1424, 1429 (10th Cir. 1992). The informant was not a declarant within the meaning of Fed.R.Evid. 806 [11] and was not subject to impeachment. *Id.*

### 3. *Croussett's Hearsay Objection*

■ Defendant Croussett contends that testimony by Government witnesses regarding the informant's tip was inadmissable hearsay since the informant was not present in court to be cross-examined. A review of the record, however, indicates that the testimony of Government agents was limited on direct examination to the simple fact that some information was received by the Philadelphia District Attorney's Office which led them to the Burger King parking lot on December 1, 1991. Before trial, we correctly found that those statements were not hearsay declarations because they were not introduced for the purpose of establishing the truth of the matters asserted in the statements, but rather, for the purpose of explaining the conduct of the Government agents. (4/20/92 Tr. at 6). Fed.R.Evid. 801(c); *Unit-*

*ed States v. Castro–Lara*, 970 F.2d 976, 980–81 (1st Cir.1992).

### 4. *Waiver of the Right to Testify*

Each defendant asserts that he did not voluntarily and knowingly waive his right to testify on his own behalf. Each makes this assertion in spite of the fact that this court granted a recess so that the defendants could consult with counsel on this issue, and then conducted an extensive colloquy with each concerning the waiver of his right to testify on his own behalf.

■ In *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the United States Supreme Court held that a criminal defendant has a constitutional right to testify on his own behalf. *Id.* at 51–52, 107 S.Ct. at 2708–09. *See also, United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 118–19 (3d Cir.1977). A defendant's waiver of his right to testify, like any other constitutional right, must be made voluntarily and knowingly. *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987). We have found no case law setting forth a standard for determining the voluntariness and intelligence of a waiver of the right to testify where the defendant himself waives that right during a colloquy. In cases in which the attorney waives the right for the defendant without a colloquy, the waiver was held to be involuntary or unknowing if the attorney flagrantly disregarded the defendant's wish to testify. *See United States v. DiSalvo*, 726 F.Supp. 596, 602–04 (E.D.Pa.1989) (attorney made decision for defendant not to testify despite defendant's desire to, and attorney never explained to defendant that he

A. My analysis was that we would only get disclosure of the confidential informant if we could show that that informant was a witness—in some way at the—at the arrest. Or if I had an entrapment defense. My client was telling me he had never met this confidential informant, so I didn't see an entrapment defense. And in addition—all the information I was getting from the Government was that—the confidential informant was not present at the scene. (11/20/92 Tr. at 15).

11. Rule 806 states:

When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has

been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination. Fed.R.Evid. 806.

had a right to testify); *United States v. Butts,* 630 F.Supp. 1145, 1147–48 (D.Me. 1986) (attorney flagrantly disregarded defendant's clearly expressed desire to testify). A colloquy is not necessary to determine the validity of a defendant's waiver of his right to testify. *See Brooks v. Zimmerman,* 712 F.Supp. 496, 503 (W.D.Pa.1989) (trial court does not have duty to conduct colloquy in order for waiver of right to testify to be knowing and intelligent). In the present case, however, we used the colloquy to emphasize to the defendants the seriousness of the decision to waive the right to testify, to ensure that the waiver was not made with "flagrant disregard" to the defendants' wishes, and to create a clear record of the circumstances of the waiver, establishing that "express and intelligent consent" was indeed given by the defendants. *Cf. United States v. Anderson,* 704 F.2d 117, 119 (3d Cir.), *cert. denied,* 464 U.S. 838, 104 S.Ct. 129, 78 L.Ed.2d 125 (1983) (discussing the preference for a colloquy over a written waiver when a defendant waives the right to a jury trial). A defendant's sworn colloquy before this court is not something we take lightly. The United States Supreme Court expressed its view of colloquies, in the context of guilty pleas, in *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The Court stated that "[s]olemn declarations in open court carry a presumption of verity." *Id.* at 74, 97 S.Ct. at 1629. Although these in-court declarations are not *per se* voluntary and intelligent, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* (citing *Machibroda v. United States,* 368 U.S. 487, 495–96, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962); *Price v. Johnston,* 334 U.S. 266, 286–87, 68 S.Ct. 1049, 1060–61, 92 L.Ed. 1356 (1948)).

## A. Robles [12]

 Despite the colloquy, defendant Robles now claims that he did not intend to waive his right to testify for the entire trial, but intended to waive the right to testify just for that day. He presents no evidence for this claim except the bare bones claim that he did not mean what he said. *See Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir. 1991) (defendant's bare bones assertion that attorney forbade him to testify is not sufficient evidence for finding of involuntary waiver of right to testify). Based on the colloquy and testimony of trial counsel at the evidentiary hearing, we find that the defendant's waiver was voluntary and intelligent. No error was committed in accepting the waiver. The defense has brought forth no evidence of any substance to refute this finding. A court is not required to determine a defendant's waiver with absolute certainty. If the defendant wishes to testify, it is his burden to make that clear to the court. *Brooks v. Zimmerman,* 712 F.Supp. 496, 503 (W.D.Pa.1989) (" 'The accused must act affirmatively' in these circumstances.") (citing, *United States v. Systems Architects, Inc.,* 757 F.2d 373, 375 (1st Cir.1985)).

**12.** The following excerpts are taken from the court's colloquy of defendant Robles:

Q: Your attorney tells me that you don't want to testify in this case. Is that correct?
A: It is not necessary, no.
Q: Okay. Are you saying that of your own free will?
A: If it's not necessary to do it, like I've been told, I will not do it.
Q: Okay. Well, let me ask you this: did anybody force you to say that or is that your own idea?
A: No one has forced me but I have an attorney who told me that it's not necessary for me to do it.
Q: And do you agree with that advice?
A: Like I said before, if it's not necessary, I will not do it.

Q: Okay, you agree with this advice then?
A: Yes, it's fine. I accept.
. . . .
Counsel: I did explain to Mr. Robles that it is my opinion he should not testify. I also explained to him that if he disagreed with my opinion he has an absolute right nonetheless to go ahead and testify. I just wanted to make sure that that's clear for the record.
The Court: Do you understand that in the final analysis if you disagreed with your attorney's advice, you could testify if you wanted to. Do you understand that?
Defendant: Well, this is the first time I go before a judge and I've never been advised before but if my attorney tells me not to do it, I will follow. (4/21/92 Tr. at 194–95).

### B. Croussett [13]

■ Defendant Croussett contends that he did not knowingly and intelligently waive his right to testify because his attorney improperly advised him to do so. Post-conviction displeasure with his attorney's advice does not change the basic constitutional inquiry. A defendant cannot, as Croussett did, indicate at trial his acquiescence in his counsel's advice that he not testify, and then later claim that his waiver was not knowing. *Brooks v. Zimmerman*, 712 F.Supp. 496, 503 (W.D.Pa.1989); *see also Hollenbeck v. Estelle*, 672 F.2d 451, 453 (5th Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 383, 74 L.Ed.2d 514 (1982). During the colloquy, we specifically informed Croussett that he had the right to testify and that no one could prevent the exercise of that right. He understood. Croussett was not forced or threatened into making the waiver.[14] We believe that defendant's right to testify was knowingly and voluntarily waived. Croussett's challenge to defense counsel's advice not to testify will be addressed below.

### 5. *Ineffective Assistance of Counsel*

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth the standard for judging claims of ineffective assistance of counsel under the Sixth Amendment. The Court held that the proper standard for attorney performance is that of reasonably effective assistance based on the circumstances as they existed at the time of the attorney's actions. *Id.* at 688, 104

S.Ct. at 2065. The Court created a two-prong test for determining ineffective assistance of counsel. To obtain reversal of a conviction, a defendant must prove that (1) the attorney's performance fell below an objective standard of reasonableness (the performance prong) and (2) the deficient performance prejudiced the defense to the degree that it deprived the defendant of a fair trial (the prejudice prong). *Id.* at 690–95, 104 S.Ct. at 2065–68. The defendant's burden for proving both of these components is heavy in light of the strong presumption that the counsel's conduct fell within the range of reasonable professional legal assistance. *Id.* at 690, 104 S.Ct. at 2066. This presumption counteracts the distortion of hindsight. The prejudice prong of the *Strickland* test requires the defendant to demonstrate that there is a "reasonable probability" that, but for the unprofessional conduct of the attorney, the outcome of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. The Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* In determining prejudice, a court must consider the totality of the evidence before the jury. *Id.* at 695, 104 S.Ct. at 2069. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.* at 700, 104 S.Ct. at 2071.

### A. Robles' Claims

Defendant Robles asserts that he was denied effective assistance of counsel because

---

13. The court conducted the following colloquy with defendant Croussett:

Q: Now your attorney informs me that you don't wish to testify in this case. Is that so?
A: Yes.
Q: Did your attorney explain to you that you have the right to testify if you want to, even though he may have advised you not to testify?
A: Yes.
Q: Is it nevertheless your voluntary decision not to testify?
A: Well, this is the first time I've ever been involved in the justice system. This is the first time that I've been involved in something like this. I think that my attorney as a professional is the one who should defend me.
Q: So you accept his advice?
A: Yes, sir.

Q: No one has forced you or threatened you to keep you from testifying?
A: No.
(4/21/92 Tr. at 196).

14. *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir.1977) and *United States v. Butts*, 630 F.Supp. 1145 (D.Me.1986), cited by Croussett, are not on point. In *Wilcox*, defense counsel threatened to withdraw if defendant chose to testify, forcing the defendant to choose between the constitutional right to testify and the Sixth Amendment right to counsel. In *Butts*, trial counsel flagrantly disregarded the defendant's express wish to testify. The present case does not present a situation where trial counsel threatened to withdraw or where the defendant was prevented from testifying by trial counsel.

his trial counsel: (1) failed to spend sufficient time with him to understand his position; (2) intimidated him into waiving his right to testify; (3) advised him not to take the stand; (4) failed to explain that it was his decision alone not to take the stand; (5) failed to call witnesses to explain the defendant's presence at the crime scene and his lack of driving ability; (6) failed to call character witnesses; and (7) refused to show defendant a trial exhibit. These assertions are without merit.

■■■ Defendant's position was and is that, while standing next to a wall, he was suddenly and inexplicably arrested. (11/20/92 Tr. at 74). Defendant's position is simple and straightforward. Trial counsel met with Robles on two occasions, totalling nearly two hours of direct communication. (*Id.* at 17). These meetings provided more than an ample opportunity for trial counsel to hear and understand the defendant's position. More importantly, trial counsel's testimony at the evidentiary hearing clearly and unequivocally demonstrates his understanding of the defendant's position. (*Id.* at 10).

■■■ The defendant's claims regarding waiver of the right to testify are frivolous, contrary to the unequivocal record and are simply a rehash of his previous claim that his waiver was involuntary. The record in this case discloses no evidence whatsoever of intimidation or threat. To the contrary, Robles stated in open court, under oath, that he had not been threatened. (4/21/92 Tr. at 194–95). The record clearly indicates that both the court and trial counsel specifically informed Robles that he alone could make the decision to testify. (*Id.*)

Also, we find that counsel's decision not to put Robles on the stand was thoughtful and intelligent. Courts have recognized counsel's duty to advise the defendant of his right to testify or not to testify, the strategic implications of each choice, and that the decision whether or not to testify belongs ultimately to the defendant. *United States v. Teague,* 953 F.2d 1525, 1533 (11th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 127, 121

L.Ed.2d 82 (1992). In addition, where counsel advises his client not to testify, that advice must be sound and reasonable, based on such considerations as the defendant's credibility and potential cross-examination. *See Id.; Underwood v. Clark,* 939 F.2d 473, 475 (7th Cir.1991); *United States v. Vargas,* 920 F.2d 167, 170 (2d Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 93, 116 L.Ed.2d 64 (1991); *Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.), *cert. denied,* 498 U.S. 831, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990).

Trial counsel testified extensively at the evidentiary hearing that he made a strategic and tactical decision not to put the defendant on the stand because, in light of the corroborated testimony of the detectives, Robles' story would not be credible. (11/20/92 Tr. at 13). Counsel also felt that Robles would not come across well to the jury because of his tendency to speak rapidly and become very excited.[15] (*Id.* at 14). Counsel was also aware that Robles' status as an illegal immigrant could be used against him on cross-examination. (*Id.* at 84). In counsel's own words, allowing Robles to testify would only have made "a difficult case even more difficult." (*Id.* at 24). Nonetheless, counsel did not make the final decision for the defendant but instead repeatedly discussed with Robles the possibility of him testifying, made it clear to Robles that the final decision on whether or not to testify was his alone and even prepped Robles to testify following the Government's case. (*Id.* at 13.). Our finding that counsel's advice not to testify was more than reasonable disposes with this claim. *United States v. Vargas,* 920 F.2d 167, 170 (2d Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 93, 116 L.Ed.2d 64 (1991).

■■■ Robles also claims that trial counsel was ineffective because he failed to call witnesses who could explain that the defendant came to this country illegally to obtain life-saving medical treatment, that the defendant did not know how to drive a car and that he was in the Burger King parking lot waiting for a ride to a faith healer. At the evidentiary hearing, Robles identified

---

**15.** At the evidentiary hearing, Robles had to be warned by the court to speak more slowly. (11/20/92 Tr. at 70, 82). In addition, the defendant's answers were often incomprehensible and unresponsive.

two witnesses who would testify to this effect. According to Robles, trial counsel did not contact these witnesses. Trial counsel, on the other hand, testified that the defendant never mentioned that he could not drive a car (11/20/92 Tr. at 21) or that he was on his way to a faith healer (*Id.* at 16). In addition, trial counsel testified that Robles was unable to provide him with any witnesses who could have bolstered his claim that he was just a bystander. (*Id.* at 10–11).

Regarding Robles claim that he does not drive, "trial counsel cannot be ineffective for failing to raise claims as to which his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required of effective trial counsel." *Dooley v. Petsock,* 816 F.2d 885, 890–91 (3d Cir.), *cert. denied,* 484 U.S. 863, 108 S.Ct. 182, 98 L.Ed.2d 135 (1987).

Similarly, regarding the alleged witnesses, inasmuch as Robles failed to provide his trial counsel with the names, addresses and telephone number of these people, counsel's failure to interview, subpoena or call them as witnesses does not give rise to ineffective assistance of counsel. *United States v. King,* 936 F.2d 477, 480 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 647, 116 L.Ed.2d 664 (1991). Significantly, Robles did not produce these people at the evidentiary hearing, nor did he provide addresses or telephone numbers. Accordingly, we were unable to assess the proposed testimony firsthand, under cross-examination, in order to evaluate its veracity and potential impact on the outcome of the trial. *See United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1016 (7th Cir.1987). Furthermore, the missing testimony does not undermine our confidence in the guilty verdict in light of the overwhelming evidence. *Strouse v. Leonardo,* 928 F.2d 548, 556 (2d Cir.1991). Accordingly, we hold that Robles failed to carry his burden under either prong of *Strickland.*

We reach the same result with respect to counsel's alleged failure to call character witnesses. According to trial counsel, the defendant provided him only with the name and telephone number of Lizette Ramos, his daughter-in-law. Counsel contacted her, found out that she knew the defendant for only three months and made a reasonable, strategic decision not to call her as a character witness.[16] Nonetheless, counsel asked her to be present at trial. Despite this request, neither Ms. Ramos nor any of the defendants friends or family showed up. We find that counsel's decision not to call the defendant's daughter-in-law does not constitute ineffective assistance of counsel. Robles also claims that trial counsel failed to call his son as a character witness. Once again, however, trial counsel testified that the defendant did not provide him with his name, address or telephone number.

Finally, Robles claims that trial counsel did not allow him to examine the title to the car which he was driving or, investigate the information contained in the title. Not surprisingly, conflicting testimony was elicited at the evidentiary hearing; trial counsel testifying that he did not recall Robles asking to see the title and that he would have shown the defendant the title if he had asked (11/20/92 Tr. at 14–15), and Robles testifying with his trademark response that he asked to see it but trial counsel told him it "was not necessary." (*Id.* at 71). We need not resolve this conflict. To begin with, ownership of the car was at best collateral and at worst irrelevant. In addition, counsel effectively used the title to gain acquittal of the defendant on Count Three of the indictment. Furthermore, when the allegation of ineffectiveness of counsel centers on a supposed failure to investigate, the focus of our inquiry is on what information would have been obtained from such an investigation and whether such investigation, if admissible, would

---

16. Trial counsel gave these reasons:

I decided that [calling her as a character witness] would backfire because as soon as the jury learned that this woman only knew him for three months, they would suspect one of several damaging things. Either that he was a recent immigrant to the country and probably an illegal alien which is something I did not want the jury to know. Or they would suspect that anybody who had known Mr. Robles for longer than that would not have positive things to say about him.

(11/20/92 Tr. at 11).

have produced a different result. *DeRobertis*, 811 F.2d at 1016. Robles has failed to present any evidence whatsoever of what such an investigation would have revealed. Accordingly, defendant Robles has failed to carry his burden under *Strickland.*

## B. Croussett's Claims

Defendant Croussett likewise claims that he was denied effective assistance of counsel because his trial counsel: (1) failed to file a motion for disclosure of the confidential informant; [17] (2) advised him not to testify and did not call him as a witness; and (3) failed to call character witnesses on his behalf.

 As with defendant Robles' claim, we believe that trial counsel's strategic and tactical decision not to call the defendant as a witness was sound and reasonable. Apparently, Croussett proposed to testify that he is a good family man, he did not know defendant Robles, he is not involved in drugs, and went to Burger King to eat and was mysteriously arrested. (11/20/92 Tr. at 50). Trial counsel was rightly concerned with the credibility of this testimony in light of the corroborated testimony of the detectives. (*Id.* at 37, 57). Trial counsel was also properly concerned with the Government's cross-examination of the defendant considering his illegal immigrant status. (*Id.*). Accordingly, we believe counsel's advice not to testify was a reasonable strategic decision and that counsel's performance did not fall below the standards of the profession.

We also note Croussett's failure to take the stand at the evidentiary hearing. Without the specifics of his testimony and without the benefit of observing his demeanor and veracity, it is virtually impossible to determine what prejudice, if any, the defendant suffered as a result of his attorney's strategic decision not to call him as a witness.[18] Accordingly, we find that defendant has also failed to establish that there is a reasonable probability that, absent the alleged error, the outcome at trial would be different.

 In support of his claim that trial counsel failed to call character witnesses on his behalf, Croussett attaches eleven letters from potential character witnesses. At the evidentiary hearing, however, trial counsel testified that the defendant did not provide him with the names of any character witnesses (11/20/92 Tr. at 34), but instead instructed him to contact one Maria Duran for character witnesses. (*Id.* at 43–44). Trial counsel spoke to Ms. Duran on several occasions (*Id.* at 32), but she failed to provide any information. (*Id.* at 35). In addition, trial counsel asked Ms. Duran to appear at trial on behalf of the defendant, but she did not show up. (*Id.* at 33, 4/21/92 Tr. at 192). Trial counsel unsuccessfully attempted to contact her following the first day of trial through her beeper number. (*Id.* at 35). We find trial counsel's efforts, pursuant to the defendant's instruction, to obtain information and testimony from an uncooperative witness fall well within the range of professional judgment. In addition, the letters submitted on Croussett's behalf do not create a reasonable probability that the verdict in this case would have been different.

 Defendant Croussett also claims, without support, that trial counsel failed to properly advise him of the severity of the

---

**17.** We believe that our ruling on Croussett's motion for disclosure is dispositive on this issue. Because we denied this motion, the defendant cannot carry his burden under the prejudice prong of *Strickland.*

**18.** In making the prejudice determination, the Supreme Court has provided the following guidance:

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the infer-

ences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.... Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96, 104 S.Ct. at 2069. Where, as here, the defendant fails to present any evidence, we cannot determine which, if any, of the factual findings will be affected.

punishment for the charged offenses and the possibility of a plea. The uncontroverted testimony of trial counsel establishes that he did in fact discuss a plea with Croussett (11/20/92 Tr. at 60) and the ten year mandatory minimum sentence. (*Id.* at 60–61). Accordingly, these claims are without merit.

At the evidentiary hearing Croussett's new counsel also pointed to several instances in which she asserts trial counsel's performance was objectively unreasonable. For example, new counsel asserts that trial counsel never met with Croussett in private, did not spend sufficient time with him and, as a result, did not investigate and pursue an entrapment defense.

In *Strickland,* the Supreme Court recognized that:

> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91, 104 S.Ct. at 2066; *see also Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986).

The Court further observed that defense counsel may properly rely on information supplied by the defendant in determining the nature and scope of the needed pretrial investigation. *Id.* As the Court said in *Strickland:*

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further

investigation may be considerably diminished or eliminated altogether.

*Id.*

As stated above, a valid entrapment defense has two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); *United States v. Wright,* 921 F.2d 42, 44 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991); *United States v. Fedroff,* 874 F.2d 178, 181 (3d Cir. 1989). The defendant has the burden of producing evidence of both inducement and lack of predisposition to commit the crime. *Wright,* 921 F.2d at 44. "After the defendant has made this showing, ... the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." *Id.*

Generally, the entrapment defense centers on the evidence adduced to meet the burden on the non-predisposition prong. *Id.* at 45. "'The entrapment defense theorizes that an individual not otherwise predisposed to criminal conduct was corrupted by some inducement on the part of the law enforcement officer. Thus, the focus is on the intent or predisposition of the defendant to commit the crime.'" *Id.* (quoting, *United States v. Berkery,* 889 F.2d 1281, 1283 (3d Cir.1989)).

At the evidentiary hearing, trial counsel testified that the defendant continually maintained his innocence and claimed that he was not involved. (11/20/92 Tr. at 30–31, 60). The defendant presented no facts to trial counsel showing that an entrapment defense existed. Essentially, a defense of entrapment contemplates that the defendant was involved in the alleged criminal activity. Where the defendant denies all involvement, it would be unreasonable for trial counsel to proceed with a claim of entrapment.

In addition, Croussett did not testify at the evidentiary hearing and produced no evidence whatsoever of Government inducement or his lack of predisposition. Furthermore, an entrapment defense, even if asserted at trial, would likely have been unsuccessful in light of the overwhelming evidence of the

defendants' willingness to commit this crime. Therefore, because Croussett failed to present evidence of inducement and lack of predisposition, and because it is improbable that an entrapment defense would have succeeded, Croussett suffered no prejudice as a result of trial counsel's failure to raise this defense. *United States v. Sanchez*, 984 F.2d 769, 772–74 (7th Cir.1993). Accordingly, defendant Croussett fails to carry his burden under either prong of *Strickland.*

### 6. *Motion for Severance*

At the evidentiary hearing, Robles, for the first time, alleged that the court should have severed the trials of the two defendants on the grounds that Robles should have been entitled to call Croussett on his behalf. (11/20/92 Tr. at 94). A defendant who fails to move for a separate trial has no cause to complain because of a joint trial absent a showing that he suffered actual prejudice as a result of the joint trial. *United States v. Washington*, 550 F.2d 320, 328 (5th Cir.), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). Prejudice is defined as "some appreciable chance that defendants would not have been convicted had the separate trial they wanted been granted." *United States v. Bostic*, 713 F.2d 401, 403 (8th Cir.1983). Robles has not satisfied his burden. Robles and Croussett were properly joined since both were involved in Counts One and Two of the indictment. *See* Fed.R.Crim.P. 8(b). Moreover, absent a showing that Croussett is willing to testify on his behalf, Robles cannot show prejudice.

### CONCLUSION

In the present case, the court held a hearing to give each defendant a full opportunity to present evidence in support of his claim. Having carefully reviewed the records of the case, we conclude, for the foregoing reasons, that the defendants are not entitled to disclosure of the confidential informant and are not entitled to a new trial.