**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2993
_____

UNITED STATES OF AMERICA

v.

CLIFTON MCLEAN, a/k/a Little Clif

Clifton McLean,
                                                    Appellant


_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2-13-cr-00487-001)
District Judge:  Hon. Gerald A. McHugh

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 8, 2017

Before:  CHAGARES, VANASKIE, and FUENTES, <u>Circuit Judges</u>.

(Filed August 3, 2017)
_____

OPINION[*]
_____


_____

    [*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

CHAGARES, Circuit Judge.

Clifton McLean appeals his conspiracy, robbery, and firearms-related convictions. For the reasons that follow, we will affirm.

I.[1]

On June 18, 2013, a paid confidential informant ("CI") told Patrick Edwards, a special agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), that, approximately a week earlier, defendant Clifton McLean said that he was "looking for something to get into, . . . [that] he was looking for something to take."[2] Appendix ("App.") 99. Edwards testified that he understood McLean to mean that McLean was "looking . . . to commit a robbery." App. 99. McLean had four prior drug trafficking convictions but was not then under any investigation.

The ATF directed the CI to arrange another meeting with McLean to "corroborate" the CI's report.[3] App. 100-01. At the meeting, the CI asked if McLean "definitely" wanted to do the robbery and McLean said that he did. App. 761. The CI said that the robbery involved a significant amount of drugs and would require McLean

_____

[1] We write solely for the benefit of the parties and recount only those facts necessary to our disposition.

[2] The CI had contacted McLean at least six times between June 16 and 18, but did not inform the ATF of these communications. All subsequent meetings and communications with McLean were recorded.

[3] The Government claims that if McLean declined to meet with the CI, the ATF would have terminated the investigation.

2

to assemble a team. Continuing to express interest, McLean offered that he had guns and knew two individuals who could help.

Twice McLean contacted the CI to ask for updates on the plan's progress. On June 28, the CI told McLean that he was soon meeting with a contact who would provide information on the robbery target and whom the CI assured that McLean was capable and interested. On July 22, the CI told McLean to expect a meeting the following week.

On August 1, 2013, McLean met with the CI and Edwards, who was posing as the CI's contact and a drug courier from New York. Edwards said he knew of a stash house containing "at least eight or nine bricks" of cocaine[4] and warned McLean to hear out the details before deciding whether he wanted to go forward with the sting. App. 782-83. McLean repeatedly expressed interest, even indicating he was ready to do the robbery right away. Edwards explained the set-up of the stash house and that inside would be at least two armed guards.[5] McLean then described how he would conduct the robbery. Edwards discussed how the stolen drugs would be divided and said that he would provide specifics about the robbery a day or two beforehand.

The three men met again on August 8, 2013. Edwards announced that the robbery would occur the next week and that there would be three armed guards instead of two.

---

[4] At the time, eight to nine bricks of cocaine were valued at approximately $320,000.

[5] Edwards testified that his description of the heavily-armed guards was meant to "dissuade anyone who would not be inclined to commit this type of robbery from doing so." App. 135.

Edwards also asked whether McLean was still interested. McLean said that he was and discussed his plan for carrying out the sting.

Later that day, the CI called McLean to tell him that Edwards had doubts about McLean and was considering finding another person to work with. The CI suggested that McLean bring his crew to the next meeting, and McLean agreed. McLean repeated that he was ready to commit the robbery on a call with the CI the following day.

On August 9, the CI, Edwards, McLean, and Leroy Winston, McLean's co-defendant, met. McLean was relieved to learn from Edwards that the robbery would take place in Philadelphia instead of New York City, although he said that he would have traveled to New York if necessary. McLean also explained to Edwards that he and Winston planned to tie up the guards but were willing to kill them. The four men plotted the robbery in detail, and Edwards told them that it would likely take place next week.

The CI called McLean on August 13 to tell him the robbery was set for the next day. McLean agreed, at Edwards' request, to sell the cocaine and pay Edwards his share in cash. The next morning, the CI picked up McLean and Winston and drove them to meet Edwards. After discussing the robbery plan, Edwards gave McLean and Winston a final opportunity to back out, which both men declined.[6] The group traveled to a junkyard, where ATF agents arrested McLean and Winston. Law enforcement found two loaded firearms at the scene of the arrest, both of which were manufactured outside of Pennsylvania.

---

[6] Edwards testified that the ATF would not have arrested McLean or Winston if they decided to abandon the plan at this point.

On September 12, 2013, a grand jury returned an indictment charging McLean with conspiring and attempting to commit a Hobbs Act robbery, 18 U.S.C. § 1951(a); conspiring and attempting to possess with intent to distribute cocaine, 21 U.S.C. §§ 846 & 841(a)(1), (b)(1)(A); carrying a firearm during and in relation to a crime of violence and drug trafficking crime, 18 U.S.C. § 924(c); and possessing a firearm as a convicted felon, 18 U.S.C. §§ 922(g) & 924(e).

Trial commenced on May 4, 2015. Pursuant to a cooperation plea agreement, Winston testified against McLean. When asked how he became involved, Winston testified that McLean "had a friend that was trying to set up a robbery." App. 336. Winston also stated that he was not surprised McLean approached him about participating because they "had talked about stuff like [that] before and . . . I did a robbery for him before." App. 339. Winston explained that in 2009 or 2010, McLean had asked him and a friend to rob drug dealers who were selling on McLean's block. McLean, however, did not participate in the robbery.

In addition to denying motions for judgment of acquittal, the District Court denied McLean's request for a jury instruction on entrapment. On May 8, 2016, the jury found McLean guilty on all counts. On June 2, 2016, after a two-day hearing, the Court denied McLean's post-trial motions and sentenced him to nineteen years of imprisonment followed by ten years of supervised release. The judgement of conviction was entered on June 13, 2016. McLean timely appealed.

II.[7]

McLean seeks to vacate several of his convictions, arguing that 1) the District Court erred in denying an entrapment jury instruction; 2) the District Court erred in denying McLean's motion for acquittal for lack of jurisdiction under the Hobbs Act; and 3) a Hobbs Act robbery is not a "crime of violence" for purposes of 18 U.S.C. § 924(c).[8]

A.

We review de novo the District Court's denial of McLean's request to instruct the jury on entrapment. United States v. Dennis, 826 F.3d 683, 690 (3d Cir. 2016). Entrapment is a "relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." United States v. Lakhani, 480 F.3d 171, 179 (3d Cir. 2007) (quotation marks and citations omitted). "Although . . . generally a question for the jury," an entrapment charge is inappropriate "unless the defendant has produced sufficient evidence on both prongs of the defense." United States v. Fedroff, 874 F.2d 178, 181 (3d Cir. 1989) (citations omitted). That is, in order to obtain the instruction, the defendant must show that 1) he was induced by the Government to commit a crime which 2) he was not predisposed to commit. Dennis, 826 F.3d at 690 (citations omitted).

---

[7] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[8] McLean also argues that his conviction under 18 U.S.C. § 922(g)(1) must be vacated because the Commerce Clause does not authorize Congress to criminalize the simple intrastate possession of a firearm. As McLean himself admits, we have determined otherwise. United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001). Accordingly, we need not address this argument.

Inducement is more than "mere solicitation" to partake in a crime. United States v. Wright, 921 F.2d 42, 45 (3d Cir. 1990). It requires a showing that law enforcement officials engaged in "persuasion, fraudulent representation, threats, coercive tactics, harassment, [or] promises of reward or pleas based on need, sympathy, or friendship." Fedroff, 874 F.2d at 184. "[P]redispositon may be defined as the defendant's inclination to engage in the crime for which he was charged, . . . measured before his initial exposure to government agents." Wright, 921 F.2d at 45 (quotation omitted). Although not dispositive, relevant factors include "the character or reputation of the defendant, including any criminal record," whether the idea for the crime originated with the Government, the potential for profiting from the crime, the defendant's reluctance to participate, and the nature of the inducement.[9] Fedroff, 874 F.2d at 183 (quoting United States v. Reynoso–Ulloa, 548 F.2d 1329, 1336 (9th Cir. 1977)).

We recently ordered a new trial for a defendant who contended that he was entrapped into committing a fictitious drug stash house heist. In Dennis, the defendant was identified by an informant, a longtime friend, in the course of the ATF's investigation into a string of robberies. 826 F.3d at 686-87. According to the informant, the defendant had "spoken of" conducting robberies in the past and once solicited the informant's help to rob somebody, although the defendant denied this at trial. Id. at 687. The ATF discovered that the defendant had prior drug-possession convictions and a

---

[9] In Wright, we noted the lack of "any case in which the defense of entrapment was successful where the defendant had not indicated reluctance to engage in criminal activity." 921 F.2d 42, 46 (3d Cir. 1990).

conviction for burglary, and enlisted the informant to solicit the defendant's help in a fabricated robbery scheme.  Id.

Three times the defendant denied the informant's offers to participate in various robberies.  Id.  On the fourth ask, the informant said that he wanted to rob a drug stash house, containing drugs valued at $2 million, to help his cancer-afflicted mother.  Id.  The defendant finally agreed.  Id.

Through a series of meetings involving an undercover ATF agent, the defendant appeared to be a willing and active participant:  he recruited other individuals, strategized the plan of attack, and plotted how the money would be divided.  Id. at 687-89.  He also declined the agent's offer to back out of the scheme.  Id. at 688.

But the defendant testified at trial that he felt in over his head and that he feigned enthusiasm for the plan, at the informant's request, to impress the agent, whom the informant had said was his old friend.  Id.  Additional trial testimony evidenced that the defendant was not prone to violence and was particularly susceptible to his friend's influence.  Id. at 688, 695.

We reversed the District Court's denial of an entrapment jury instruction and vacated the conviction.  Id. at 695.  The Government, "with the help and persuasion of . . . a friend of the target, actively led [the defendant] into the commission of a crime," sufficiently demonstrating inducement.  Id. at 691-92.  As for lack of predisposition, we determined that the absence of prior violent crime or robbery convictions, his initial repeated reluctance to help, and his trial testimony satisfied the defendant's burden.  Id. at 692-93.

8

McLean bears some similarity to the defendant in <u>Dennis</u> but the facts differ in material ways. Although he lacks any relevant criminal history, the ease with which the ATF was able to entice McLean's participation, his ensuing enthusiasm for the plot, and his rebuff of multiple opportunities to back out evidence his predisposition to the criminal conduct.[10] <u>Cf., e.g.</u>, <u>Wright</u>, 921 F.2d at 46 (affirming the unavailability of the entrapment defense where the defendant did not hesitate to join, and exhibited a "ready receptiveness" to, the criminal scheme). Additionally, McLean faced no personal plea from a friend or promise of an exorbitant reward to meet a desperate need. We know little about the interactions between McLean and the CI prior to the ATF's involvement. The evidence we have, however, shows that the Government merely offered McLean the criminal opportunity and that McLean willingly accepted. Without more, the evidence is insufficient to show inducement. As a result, McLean was not entitled to an entrapment jury instruction.

---

[10] Unlike McLean, we do not regard his post-inducement conduct as irrelevant to the predisposition analysis. McLean cites a sister court which held that "active engagement in the scheme after the government's extended efforts to procure his participation has limited bearing on his [initial] predisposition," <u>United States v. Mayfield</u>, 771 F.3d 417, 442 (7th Cir. 2014). But that case is distinguishable — the ATF made no "extended efforts" to solicit McLean — and regardless, we have routinely counted the defendant's enthusiasm as evidence that he was predisposed to a particular crime. <u>E.g.</u>, <u>United States v. Lakhani</u>, 480 F.3d 171, 179-80 (3d Cir. 2007) (holding that the defendant's "ready response" to a Government-initiated criminal scheme and lack of reluctance to participate showed predisposition); <u>see also</u> <u>Jacobson v. United States</u>, 503 U.S. 540, 550 (1992) ("[T]he entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition."). Here, the paltry evidence of lack of predisposition, especially given the evidence to the contrary, is insufficient to warrant submitting the question to the jury. <u>See</u> <u>Gov't of V.I. v. Lewis</u>, 620 F.3d 359, 364 (3d Cir. 2010) ("As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

B.

McLean argues that his Hobbs Acts convictions cannot be sustained because there was insufficient evidence that his conduct affected or would have affected interstate commerce. The Hobbs Act criminalizes a person who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by robbery . . . ." 18 U.S.C. § 1951(a). The requirement that the defendant's conduct affect commerce is jurisdictional, and it must be proven along with the other elements of the offense. See United States v. Powell, 693 F.3d 398, 401-02 (3d Cir. 2012). When reviewing a sufficiency-of-the-evidence challenge, we construe the evidence in the light most favorable to the Government and will sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. McGuire, 178 F.3d 203, 206 n.2 (3d Cir. 1999).

We have held that federal jurisdiction exists over Hobbs Act conspiracy and attempt charges arising from a fictitious sting operation. United States v. Jannotti, 673 F.2d 578 (3d Cir. 1982) (en banc). In that case, the defendants were convicted under the Hobbs Act after becoming involved in a fabricated Government plot targeted at public officials suspected of corruption. Id. at 581. The District Court set aside the defendants' convictions for lack of jurisdiction, and we reversed. Id.

We noted that the jurisdictional reach of the Hobbs Act extended as far as Congress's power under the Commerce Clause would allow.[11] Id. at 590-91 (citations omitted). This expansive power allows Congress to regulate all "activities affecting interstate commerce," and a statute doing so may apply in a case even where no "actual interstate effect is shown." Id. at 591 (citing Perez v. United States, 402 U.S. 146, 150-53 (1971)). Because the defendants conspired "to do acts which, had they been attainable, would have affected commerce," a "sufficient federal interest was implicated to support federal jurisdiction," "regardless of whether an actual effect on commerce was 'reasonably probable.'" Id. at 592.

McLean first contends that this precedent was "called into doubt" by an intervening decision, United States v. Manzo, 636 F.3d 65 (3d Cir. 2011). McLean Br. 30. That case, however, specifically concerned whether political candidates can violate portions of the Hobbs Act related to extortion. Manzo, 636 F.3d at 68-69. It did not overturn, explicitly or impliedly, our decision in Jannotti. See id. at 68 (affirming that "Jannotti represents the proper circumstances that support a charge for conspiracy to commit a Hobbs Act violation"). Accordingly, the argument fails.[12]

---

[11] See also, e.g., United States v. Walker, 657 F.3d 160, 179 (3d Cir. 2011) ("[The Hobbs Act's] required effect on interstate commerce is identical with the requirements of federal jurisdiction under the Commerce Clause.").

[12] McLean contends that Manzo is relevant because in it we intimated that the defense of legal impossibility may be available for certain Hobbs Act violations. 636 F.3d 65, 67 n.10 (3d Cir. 2011). He does not argue why that defense applies here, however, and so the argument is forfeited.

11

McLean also contends that recent Supreme Court jurisprudence narrows the Commerce power and warrants revisiting the holding in Jannotti.[13] This argument too is meritless.

In National Federation of Independent Business v. Sebelius, the Supreme Court held that the Affordable Care Act's requirement that individuals purchase health insurance or suffer a penalty was not a valid exercise of Congress's Commerce power. 132 S. Ct. 2566, 2591 (2012) ("NFIB"). Although the Commerce Clause affords Congress broad authority, id. at 2586, it is not so broad as to allow Congress to "compel individuals not engaged in commerce to purchase an unwanted product," id. at 2586-88. According to McLean, this means that "the federal government lacks power to create conspiracies that would have never occurred in the absence of federal intervention." McLean Br. 33.

This argument does not follow from the Supreme Court's holding. NFIB concerned Congress' authority to compel commercial activity, not its ability to proscribe attempted or planned criminal activity. That the Government fabricates a crime in a reverse sting operation does not alter the fact that a defendant participant, of his own volition, contemplates and takes affirmative acts toward conduct which, if carried out as envisioned, would affect or potentially affect interstate commerce. The Supreme Court has not displaced the long-held rule that this contemplated effect on commerce is

---

[13] Although this Court must usually rule en banc to overturn a precedential decision, we may "reevaluate the holding of a prior panel which conflicts with intervening Supreme Court precedent." In re Krebs, 527 F.3d 82, 84 (3d Cir. 2008).

sufficient to sustain federal jurisdiction.  See, e.g., Jannotti, 673 F.2d at 592 ("Congress can constitutionally reach inchoate offenses" — including under the Hobbs Act — "because [of their] potential threat to interstate commerce" (citation omitted)); NFIB, 132 S. Ct. at 2590 (stating that "Congress can anticipate the effects on commerce" in order to regulate certain activity (emphasis omitted)).

At trial, a Government expert testified that cocaine originates from outside of Pennsylvania, and that the theft of eight to nine kilograms of the drug would affect the drug market.  This evidence showed that if McLean were successful in his plan he would have affected interstate commerce.  Thus, the jurisdictional element was satisfied.[14] Manzo, 636 F.3d at 61 n.4 (reiterating that satisfying the Hobbs Act jurisdictional element requires only "proof of a [potential] de minimis effect on interstate commerce" even if the contemplated activity is fictitious (alteration in original) (citation omitted)); see also Taylor v. United States, 136 S. Ct. 2074, 2077-78 (2016) ("[T]he prosecution in a Hobbs Act robbery case satisfies the Act's commerce element if it shows that the defendant robbed or attempted to rob a drug dealer of drugs or drug proceeds.").  Accordingly, we will affirm the convictions.

C.

---

[14] McLean argues that entirely fictitious stings cannot yield Hobbs Acts convictions because "there is no possibility at all, neither remote, potential, nor de minimis, of any effect on interstate commerce."  McLean Br. 29.  However, "factual impossibility . . . is not a defense to a charge of conspiracy or attempt."  Manzo, 636 F.3d at 66 (citation omitted).  The Supreme Court has not held otherwise, and so our precedent stands.

McLean contends that his conviction under § 924(c) must be vacated because two of the possible predicate offenses — Hobbs Act robbery and conspiracy — do not qualify as crimes of violence.[15] We review this question de novo, United States v. Singletary, 268 F.3d 196, 199 (3d Cir. 2001), and hold that McLean's argument is meritless.

Section 924(c) prohibits, inter alia, carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." Relevant here, a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[16] This describes McLean's Hobbs Acts convictions.

Our conclusion rests squarely on United States v. Robinson, 844 F.3d 137 (3d Cir. 2016). There, the defendant robbed two stores, in each case wielding a gun to threaten cashiers and demand that they hand over money. Id. at 139. He was charged with and convicted of Hobbs Act robbery, 18 U.S.C. 1951(a), and brandishing a firearm in relation to a crime of violence, 18 U.S.C. § 924(c). Id. On appeal, the defendant argued that

---

[15] McLean does not dispute that his drug possession convictions qualify as predicate offenses under § 924(c). Rather, he argues that his robbery convictions do not, and because it is unclear on which of the predicate offenses the jury relied in convicting him, the conviction must be set aside. Because we find that his robbery convictions suffice as predicate offenses, we need not reach this argument.

[16] The statute also defines "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). McLean argues that, in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), this definition — called the "residual clause" — is constitutionally void for vagueness. We need not reach this argument because we conclude that McLean's Hobbs Act convictions were of crimes of violence as defined under 18 U.S.C. § 924(c)(3)(A).

Hobbs Act robbery is not a "crime of violence" as required for his conviction under § 924(c). We disagreed, holding that because the defendant's contemporaneous convictions — for robbery, and for using a gun in furtherance of it — "necessarily support the determination that the predicate offense was committed with the 'use, attempted use, or threatened use of physical force,'" the predicate offense constituted a crime of violence for purposes of § 924(c). Id. at 143.

In other words, we may look to the contemporaneous convictions of the predicate crime and of § 924(c) to determine if the facts underlying the § 924(c) conviction render the commission of the predicate crime a "crime of violence." See United States v. Galati, 844 F.3d 152, 155 (3d Cir. 2016) (applying Robinson and explaining that "the question before us is not whether violation of [the predicate criminal statute] is a crime of violence, but whether violation of [the statute] that results in personal injury and during which a firearm is discharged is a crime of violence").

McLean was charged with conspiring to "take . . . cocaine . . . by means of actual or threatened force, violence, or fear of injury . . . ," App. 24, and attempting to take cocaine "by using a loaded firearm to threaten and control the victims and steal cocaine from them," App. 28. McLean was also charged with carrying a loaded firearm "during and in relation to a crime of violence . . . ." App. 31. The indictment specifies that McLean "brought [a gun] . . . loaded with four live rounds of ammunition, with him, to use during the robbery." App. 27. The jury found him guilty on all counts.

Although McLean did not ultimately use his firearm, the jury's contemporaneous findings of guilt recognized that the loaded guns featured prominently in McLean's plan

15

for the unrealized robbery.  As in <u>Robinson</u>, "the combined convictions before us make clear that the 'actual or threatened force, or violence, or fear of injury' in [McLean]'s Hobbs Act robbery sprang from the barrel of a gun."  844 F.3d at 144.  Accordingly, McLean's Hobbs Act convictions qualify as "crimes of violence" for purposes of his conviction under § 924(c).[17]  We will affirm his judgment of conviction.

III.

We have considered McLean's remaining arguments and conclude that they are without merit.  For the foregoing reasons, we will affirm the judgment of conviction.

---

[17] The various scenarios McLean posits in which robbery could occur absent physical force are inapposite here.  <u>See</u> <u>United States v. Galati</u>, 844 F.3d 152, 154-55 (3d Cir. 2016) (disregarding the defendant's argument that "the minimum conduct prohibited by [his robbery] offense[]" does not require the use of physical force because in his case "a jury determined that a firearm had been used in the commission of the offense, and [that] the use of a firearm indicates the use, attempted use, or threatened use of physical force in the commission of the offense").

We are also unpersuaded that joining a conspiracy cannot be a crime of violence, <u>Cf.</u> <u>United States v. Preston</u>, 910 F.2d 81, 87 (3d Cir. 1990) (holding that a state conviction for conspiracy to commit a violent felony was itself a crime of violence for purposes of a sentencing statute); <u>see also</u> <u>United States v. Turner</u>, 501 F.3d 59, 67-68 (1st Cir. 2007) (citing cases showing that "the overwhelming weight of authority holds that a Hobbs Act conspiracy is a 'crime of violence' for purposes of [§] 924(c)"), notwithstanding recent Supreme Court jurisprudence clarifying that "physical force" means "violent force" in a separate statute, <u>see</u> <u>Johnson v. United States</u>, 559 U.S. 133, 138, 140-41 (2010).  The jury here found that McLean conspired to commit a robbery through the actual or threatened use of force.  For the reasons stated above, this is sufficient to sustain his conviction under § 924(c).