[Cite as *State v. Carver*, 2022-Ohio-3238.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111292 |
| v. | : | |
| JOSHUA CARVER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 15, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638748-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant*.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Joshua Carver appeals his conviction for importuning, following a bench trial at which the trial court acquitted Carver of attempted unlawful sexual contact with a minor and possession of criminal tools. For the following reasons, we affirm.

{¶ 2} This appeal focuses on Carver's predisposition to commit a sex offense based on his claim to have been entrapped by police officers posing as a 15-year-old girl named "Isabella." Carver, then 32 years old, contacted "Isabella" through a dating website. "Isabella's" profile suggested she was 43 years old, although the profile picture depicted a much younger, if not teenaged, female, depending on the observer's perspective. After a brief discussion on the website's platform, Carver agreed to use the text messaging application associated with his personal phone number. For about 30 minutes, "Isabella" and Carver sporadically texted back and forth, mostly discussing biographical information and engaging in idle chitchat, but in those messages "Isabella" told Carver she was 15 years old and was staying home from school for the day. Upon learning of "Isabella's" age, Carver asked: "Do [you] think [you] could handle a big guy like me?" "Isabella" sought an explanation for that statement. Carver evaded the question, saying he wanted to hear her voice first before discussing details. He then reiterated that he "had a lot of muscle" and "Isabella's" mother would likely not approve of their relationship.

{¶ 3} Carver asked to speak with "Isabella" on the telephone, but "Isabella" had to "wait for her mom" to leave the house before making the call. In reality, the

law enforcement officer conversing with Carver through text messaging was waiting for the female undercover officer to arrive to her shift to provide "Isabella" a voice.

{¶ 4} In the first telephonic conversation, Carver told "Isabella" that he wanted to meet at "Isabella's" house but did not want her neighbors to see him or his car. "Isabella" asked Carver about his plans if they met in the nearby park. Carver said he wanted to make sure she was real, professing a fear their meeting was a scam. He also articulated his fear of going to jail because he was twice her age. By the third phone conversation, an hour into their encounter, "Isabella" again (several times in fact) asked what Carver's intentions were. Carver said he did not want to get into "explicit" details, but he is "a big guy," a "stallion," shading the discussion in a sexually suggestive manner. He further stated that he "definitely" wanted to do more than hold hands with the purported 15-year-old and would bring his "Magnum" condom to their meeting. In that same conversation, Carver again mentioned that he wanted to make sure he was not going to get in trouble with the police. "Isabella" responded that she did not want to get in trouble either but just wanted to know what Carver had planned for their meetup.

{¶ 5} By the fourth phone conversation, all but the first initiated by Carver, upon learning that "Isabella" was a virgin, Carver told "Isabella" that he would like to perform a specific sexual act with her if they met at the park near her "house." Carver agreed and did in fact travel to the designated location, where he was arrested by law enforcement officers after he arrived at the designated meeting location with the "Magnum" condom he told "Isabella" about. In his initial interview with the

arresting officers, Carver admitted he knew he was breaking the law but blamed his conduct on "Isabella's" persistence in getting him to admit his sexual intentions — telling the officers that "Isabella" had expressly asked Carver to describe his intended sex acts but that he had no intentions of doing anything other than holding hands.

{¶ 6} Entrapment became Carver's primary defense to the charges for unlawful sexual conduct with a minor, in violation of R.C. 2923.02 and 2907.04(A), importuning, in violation of R.C. 2907.07(D)(2), and possessing criminal tools, in violation of R.C. 2923.24(A). The trial court found Carver guilty of importuning but acquitted him on the remaining charges. Carver was sentenced to a five-year term of community-control sanctions.

{¶ 7} In this appeal, Carver advances two assignments of error.[1] In the first to be addressed, Carver claims that the trial court entered inconsistent verdicts based on the acquittal of the unlawful sexual conduct, which according to Carver proves the trier of fact believed that Carver was entrapped as legally defined. In the second, he claims his convictions are against the weight of the evidence because Carver proved the elements of entrapment.

{¶ 8} The first argument is without merit. Carver asks this panel to adopt *United States v. Maybury*, 274 F.2d 899, 903 (2d Cir.1960), in which it was concluded that a judge may not render inconsistent verdicts following a bench trial

---

[1] The assignments of error are reordered for the sake of discussion.

by drawing a distinction from the well-settled law that inconsistent jury verdicts are constitutionally permissible. This district has declined to adopt *Maybury. State v. Burke*, 8th Dist. Cuyahoga No. 54047, 1988 Ohio App. LEXIS 2442, 6 (June 16, 1988); *see also State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 47 (8th Dist.), citing *State v. Williams*, 8th Dist. Cuyahoga No. 87218, 2006-Ohio-5325, ¶ 20-21, *State v. Smith*, 8th Dist. Cuyahoga No. 81344, 2003-Ohio-3215, ¶ 31, *State v. Lynch*, 8th Dist. Cuyahoga No. 53633, 1989 Ohio App. LEXIS 1092 (Mar. 30, 1989), and *Brecksville v. Malone*, 8th Dist. Cuyahoga Nos. 75466 and 75651, 2000 Ohio App. LEXIS 587, 4-5 (Feb. 17, 2000); *State v. Kotomski*, 11th Dist. Ashtabula No. 2015-A-0047, 2016-Ohio-4731, ¶ 48, citing *Smith* and *State v. Henderson*, 1st Dist. Hamilton No. C-130541, 2014-Ohio-3829, ¶ 25. Carver nevertheless asks this court to reconsider the rejection of *Maybury*, but as an intermediate panel, we are bound by the prior decisions and those of our superior courts. *See Harris v. Rivera*, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (inconsistent verdicts upon multiple counts following a bench trial do not raise any constitutional concerns); *accord State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 81 (following *Maybury*).

**{¶ 9}** In the remaining assignment of error, Carver claims that his conviction for importuning was against the weight of the evidence because he "planned on engaging in purely innocent behavior. It was the officers who insisted on escalating things, insinuating that '[Isabella]' wanted to engage in sexual activity, and that if Mr. Carver was uninterested in sex, then 'she' was uninterested in him."

This theme was central to Carver's trial strategy. According to Carver, because the trial court acquitted Carver of unlawful sexual conduct with a minor, claimed to have been based on the entrapment defense, that should have applied to the importuning as well. As Carver concedes, this argument falls under the framework of a weight-of-the-evidence standard of review.

{¶ 10} "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Carver was convicted of importuning under R.C. 2907.07(D)(2), which provides as relevant to this case: "No person shall solicit another by means of a telecommunications device * * * to engage in sexual activity with the offender when the offender is eighteen years of age or older" and "the other person is a law enforcement officer posing as [a 15-year-old person], the offender believes that the other person is [15 years old] or is reckless in that regard, and the offender is four or

more years older than" the age of the portrayed person. It is undisputed that the elements have been satisfied in this case. The sole question advanced is whether the trial court's rejection of the entrapment defense as to the importuning was against the weight of the evidence.

{¶ 12} Entrapment is an affirmative defense, established if an offender proves that the criminal design originated "with the officials of the government, and they implant[ed] in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran*, 5 Ohio St.3d 187, 449 N.E.2d 1295 (1983), paragraph one of the syllabus. Ohio relies on a subjective test to establish entrapment. *Id.* That test focuses on the predisposition of the accused to commit the offense, which places emphasis on the offender's criminal culpability and *not the culpability of the police officer*. *Id.* at 192. Entrapment does not occur when "it is shown that the accused was predisposed to commit the offense," and the government "merely afford[s] opportunities or facilities for the commission of the offense." *Id.* Courts generally review the following factors, although nonexhaustive, as relevant to establishing predisposition:

> (1) The accused's previous involvement in criminal activity of the nature charged, (2) the accused's ready acquiescence to the inducements offered by the police, (3) the accused's expert knowledge in the area of the criminal activity charged, (4) the accused's ready access to contraband, and (5) the accused's willingness to [become involved] in criminal activity.

*Id.* No one factor controls over another.

{¶ 13} Carver claims that he was not predisposed to solicit a minor to engage in sexual activity because the undisputed trial evidence demonstrated his general interest in older females and because his crime was induced by the law enforcement officers, focusing on the trial court's stated reliance on the officers' supposed overreach. According to the trial court, the law enforcement officers "really went after" Carver, "they wouldn't let up." Tr. 208:1-4. Carver's appellate arguments echo that theme. The question of whether Carver was predisposed to solicit a minor for the purposes of engaging in sexual activity does not hinge on the officers' supposed overreach. *Doran* at paragraph one of the syllabus. Focusing on the law enforcement officers' conduct in resolving the entrapment question would be legally erroneous.

{¶ 14} Accordingly, the sole question is whether the weight of the evidence demonstrates that Carver was predisposed to telephonically solicit a 15-year-old minor to engage in sexual activity. The burden of production and the burden of proof with respect to the affirmative defense, proof by a preponderance of the evidence, is on Carver. R.C. 2901.05(A).

{¶ 15} It is true that Carver does not have a history of sexual deviancy. Nonetheless, "a first-time offender can be predisposed to commit a crime just as surely as a repeat offender can." *United States v. Martin*, 780 Fed.Appx. 248, 252 (6th Cir.2019), citing *United States v. Gordon*, 844 F.2d 1397, 1406 (9th Cir.1988) ("[O]ne may be predisposed to commit his first crime as much, if not more than, a chronic offender."). Moreover, "the government does not entrap a defendant by

simply giving him the opportunity to commit a crime *or initially suggesting it*." (Emphasis added.) *Id.*, citing *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir.1993). The pertinent question is "whether the government overcame the will of a reluctant, otherwise law-abiding person." *Id.,* citing *Jacobson v. United States*, 503 U.S. 540, 553-554, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), and *United States v. Barger*, 931 F.2d 359, 367 (6th Cir.1991).

{¶ 16} In this case, Carver was the first to broach the topic of the criminal ramifications of his intended relationship with "Isabella" and he did so immediately after discussing "Isabella's" age. After 30 minutes of exchanging mostly benign text messages, Carver indicated that he would drive to a park near "Isabella's" home. To that "Isabella" asked "what are we going to do?" Carver responded that "well [sic] figure it out I wanna hear your voice first." Carver asked "Isabella" to call him, and it was immediately in that call that Carver discussed trying to conceal his arrival from "Isabella's" neighbors and the police because he did not want to go to jail. In the interview conducted by the arresting police officers, Carver conceded the legal difference between his holding a minor's hand and seeking to engage in sexual activity. Thus, Carver's statements hardly lend themselves to an innocent motive. The officers' operation offered nothing more than an opportunity to commit the sex offense, but the criminal seed was already present within Carver.

{¶ 17} This is further demonstrated by the fact that Carver's reluctance to answer "Isabella's" questions with respect to his intentions was objectively motivated by self-preservation, not a reluctance to engage in the underlying criminal

activity. *United States v. McLean*, 702 Fed.Appx. 81, 85 (3d Cir.2017), fn. 9 (generally, the defendant's failure to express reluctance to commit the crime before being induced by the government agent into committing a crime obviates the ability to assert entrapment as a defense at trial); *see also United States v. Khan*, 6th Cir. No. 20-1179/1223, 2021 U.S. App. LEXIS 26750, 14 (Sept. 3, 2021). At no time during the conversation did Carver ever announce his reluctance to engage in the sex offense. Instead, each time "Isabella" asked of Carver's intentions, he refused to divulge the "explicit details" of his intent until he saw her in person to confirm she was real. He repeatedly articulated his concern about a potential meeting with "Isabella" being a scam, and Carver was looking for proof that "Isabella" existed or that police officers would not be involved. *See, e.g., United States v. Hood*, 811 Fed.Appx. 291, 298 (6th Cir.2020) (because it was less than an hour from the agent suggesting intimacy between the minor and the defendant and because the defendant continually asked the purported minor if she was "setting him up," the evidence demonstrated that the defendant was not reluctantly engaging in the sexual discussion with the purported minor for the purposes of entrapment).

{¶ 18} In other words, Carver's reluctance, if any, was motivated by avoiding arrest for what he perceived to be unlawful conduct — if Carver intended a nonsexual relationship with the minor, there was no need for Carver to fear being arrested as Carver tacitly conceded in his interview with arresting officers. *See United States v. Unrein*, 688 Fed.Appx. 602, 609 (11th Cir.2017), citing *United States v. Alston*, 895 F.2d 1362, 1368-1369 (11th Cir.1990) ("affirming denial of entrapment instruction

where the defendant readily pursued the crime, 'never once expressed even a distaste' for criminal activity, and the undercover agent did not pressure him into criminal activity"), and *United States v. Ventura*, 936 F.2d 1228, 1233 (11th Cir.1991) ("affirming denial of entrapment defense where defendant had 'indicated no reluctance whatsoever' to engage in criminal act and agent did not coerce him").

{¶ 19} Since the issue in this appeal is Carver's predisposition to telephonically solicit a minor to engage in sexual activity, we cannot conclude that his conviction amounted to a manifest miscarriage of justice. Although the law enforcement officers presented Carver the opportunity to commit the sex offense, the evidence in this case demonstrates that Carver was predisposed to commit the crime when the opportunity presented itself. Carver has not demonstrated that his conviction was procured through entrapment, and the conviction for importuning is not against the weight of the evidence.

{¶ 20} We affirm the conviction.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., and
MARY J. BOYLE, J., CONCUR